Victor BURGESS, Glen Douglas, Dean Edenshaw, Percy Frisby, Hydaburg Co-operative Association, Albert Natkong, Don Natkong and Robert Sanderson, Appellants,

v.

ALASKA LIEUTENANT GOVERNOR TERRY MILLER, Appellee.

No. 6915.

Supreme Court of Alaska.

Nov. 5, 1982.

Walter T. Featherly, III, Roberts & Shefelman, Anchorage, for appellants.

Laura L. Davis, Asst. Atty. Gen., and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BURKE, C.J., and RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ.

OPINION

RABINOWITZ, Justice.

In May 1981, Terry Miller, Lieutenant Governor of Alaska, prepared an initiative petition[1] entitled "Personal Consumption of

1. There are several steps in the Alaska initiative process. The proponents of the initiative must first file an application with the lieutenant governor. Alaska Const. art. XI, § 2; AS 15.-45.020. If the application is certified, the lieutenant governor must prepare a petition containing, among other things, a summary of the subject matter of the proposed bill. Alaska Const. art. XI, § 3; AS 15.45.090. If the petition is signed within one year by "qualified voters equal in number to 10 per cent of those who voted in the preceding general election

Fish and Game" which included the following summary:

> This proposal would, for fishing, hunting, or trapping for personal consumption, prevent classification of persons on the basis of economic status, land ownership, local residency, past use or dependence on the resource, or lack of alternative resources. It would, as does the existing law, also bar classifications by race or sex for any taking of fish or game. It repeals existing provisions of the Fish and Game code, which provide for, or relate to, subsistence hunting and fishing.

In March 1982, after the requisite number of qualified signatures had been obtained and the petition had been filed by the initiative sponsors, the lieutenant governor notified the sponsors that the proposed law would be placed on the November 1982 general election ballot.

On April 9, 1982, appellants filed a complaint against the lieutenant governor in superior court alleging that the summary in the initiative petition was misleading and biased in favor of the proponents of the initiative because it stated that the proposed bill "would . . . prevent classification of persons on the basis of . . . local residency, past use or dependence on the resource, or lack of alternative resources" when in fact the bill would not prevent enforcement of a federal law[2] classifying persons on the

---

and resident in at least two-thirds of the election districts of the state," it may be filed with the lieutenant governor. Alaska Const. art. XI, § 3; AS 15.45.140. The lieutenant governor then prepares a ballot title and proposition summarizing the proposed law and places them on the ballot for the first statewide election held more than one hundred twenty days after adjournment of the legislative session following the filing. Alaska Const. art. XI, § 4; AS 15.-45.180–190. Any person aggrieved by a determination made by the lieutenant governor may bring an action in superior court within thirty days of the date on which notice of the determination was given. AS 15.45.240.

The initiative in question reads as follows:

AN INITIATIVE

For an Act entitled: "An Act relating to individual equality for personal consumptive users of fish and game, and to repeal existing laws relating to subsistence use of fish and game."

BE IT ENACTED BY THE PEOPLE OF THE STATE OF ALASKA:

*Section 1. AS 16.05 is amended by adding a new section to read:

Section 16.05.907. HUNTING, FISHING AND TRAPPING.

(a) This section may be cited as the Alaska Anti-Discrimination Hunting, Fishing and Trapping Rights Act.

(b) There shall be no discrimination in the allocation of fish or game based on race or sex.

(c) Fish and wildlife are reserved to all the people of the state for common use. These resources should be equally available to personal consumptive users of all fish or game, and no distinctions shall be made for the reason of economic status, land ownership, local residency, past use or past dependence on the resource, or lack of alternative resources.

(d) The Board of Fisheries and the Board of Game may adopt regulations providing for and distinguishing between commercial fishing, sport fishing, hunting and trapping.

*Section 2. AS 16.05.090(c), AS 16.05.094, AS 16.05.251(b), AS 16.05.255(b), AS 16.05.-257, AS 16.05.930(e), AS 16.05.940(17), AS 16.05.940(26), and AS 16.05.940(27) are repealed.

*Section 3. If any provision of this Act or the application thereof to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications thereof.

2. Section 804 of the Alaska National Interest Lands Conservation Act (ANILCA) provides:

PREFERENCE FOR SUBSISTENCE USES

Except as otherwise provided in this Act and other Federal laws, the taking on public lands of fish and wildlife for nonwasteful subsistence uses shall be accorded priority over the taking on such lands of fish and wildlife for other purposes. Whenever it is necessary to restrict the taking of populations of fish and wildlife on such lands for subsistence purposes in order to protect the continued viability of such populations, or to continue such uses, such priority shall be implemented through appropriate limitations based on the application of the following criteria:

(1) customary and direct dependence upon the populations as the mainstay of livelihood;

(2) local residency; and

(3) the availability of alternative resources.

Subsection 805(d) of ANILCA provides that the federal government will not move to implement Section 804 on public lands outside national parks and monuments so long as the State of Alaska maintains a subsistence preference program that complies with the requirements set forth in § 805(a)–(c). 16 U.S.C.A. §§ 3114, 3115 (West Supp.1975–1981).

basis of those criteria. Appellants sought a ruling declaring the initiative petition invalid as well as an injunction preventing the lieutenant governor from preparing and placing on the general election ballot a ballot title and proposition based on the proposed bill. After cross-motions for judgment on the pleadings had been filed, the superior court entered a Memorandum of Decision and Order in which it granted the state's motion. In its decision, the superior court stated among other things that:

> [T]he question this court must decide is not whether the petition summary or the ballot summary state the effect of a proposed law, but rather whether the summary accurately states the subject matter of the proposed law, fairly and impartially. AS 15.45.090(2), 15.45.180.
>
> It may well be that adoption of the initiative by the voters in the November general election will result in imposition of subsistence preference for fish and game on all federal land in Alaska. The initiative does not and cannot speak to that issue. What it can and does speak to is the matter of subsistence classification on state land and I find that the summary fairly and accurately states the subject matter of the proposed law.

This appeal followed.[3]

Article XI, section 3 of the Alaska Constitution provides that the lieutenant governor shall include a "summary of the subject matter" of the proposed bill in the initiative petition. AS 15.45.090 provides that this summary shall be "impartial." If the completed petition is accepted by the lieutenant governor, article XI, section 4 of the constitution provides that the "lieutenant governor shall prepare a ballot title and proposition summarizing the proposed law, and shall place them on the ballot . . . ." AS 15.45.180 provides that the proposition "shall, in not more than 100 words, give a true and impartial summary of the proposed law." [4]

This appeal raises a question of first impression for this court regarding the adequacy of an initiative petition summary and ballot proposition. In regard to issues of this character, the Supreme Court of Colorado states that an initiative summary must be

> a fair, concise, true and impartial statement of the intent of the proposed measure. The summary may not be an argument for or against the measure, nor can it be likely to create prejudice for or against the measure.[5]

The Arkansas Supreme Court holds that ballot titles (the Arkansas term for summaries) should be

> complete enough to convey an intelligible idea of the scope and import of the proposed law, and that it ought to be free from any misleading tendency, whether of amplification, of omission, or of fallacy, and that it must contain no partisan coloring.[6]

Massachusetts has defined a summary in the following manner:

> A summary is an abridgement, abstract, compendium, or epitome. The word carries with it the idea that, however much the subject matter may be condensed, the sum and substance of it must remain. No doubt details may be omitted or in many instances covered by broad generalizations, but mention must be made of at least the main features of the measure. And the summary must be "fair"; that is to say, it must not be partisan, colored, argumentative, or in any way one-sided, and it must be complete enough to serve its purpose of giving the voter who is asked to sign a petition or who is present in a polling booth a fair and intelligent conception of the main outlines of the measure. It must do more than merely indicate the field of

---

3. Appellants request this court to reverse the superior court, invalidate the initiative petition, and enjoin the lieutenant governor from placing the question of the proposed law on the November ballot. Alternatively, appellants request that the court revise the ballot proposition.

4. The state has indicated that the lieutenant governor plans to use the text of the petition summary for the ballot proposition.

5. *In re Second Initiated Constitutional Amendment Respecting the Rights of the Public to Uninterrupted Service by Public Employees of 1980,* 613 P.2d 867, 869 (Colo.1980).

6. *Hope v. Hall,* 229 Ark. 407, 316 S.W.2d 199, 201 (1958). The Supreme Judicial Court of

We believe that these authorities identify the appropriate criteria for us to use in determining whether the lieutenant governor's summary in the case at bar conforms with the constitutional and statutory requirements of an impartial and truthful summary. In conducting this inquiry, we will utilize a deferential standard of review.[7] The burden is upon those attacking the summary to demonstrate that it is biased or misleading.

The primary emphasis of appellants' argument is that the lieutenant governor's summary exaggerates the basic purpose of the proposed legislation. Appellants complain that the summary includes a "false" statement that the proposed bill would eliminate all subsistence hunting preferences in Alaska when in fact the bill would not, and was not intended to, eliminate the federal subsistence preference.

The lieutenant governor is not under an obligation to assume that every reader of the petition or ballot summary will take the wording of the summary at precisely its dictionary value. He is entitled to rely on the premise that readers of the summary understand that in the absence of explicit language to the contrary, state initiatives are intended to change state law and bind the state government, not federal law and the federal government.[8] Even under the circumstances of this case, the Alaska Constitution and the state electoral laws do not require the lieutenant governor to give "special" reminders to the voters regarding the scope of a state initiative.

Appellants also argue that the summary is invalid because it attempts to state what the effect of the proposed bill would be, *i.e.,* "[t]his proposal *would . . . prevent* classification of persons . . ." (emphasis furnished). Statements regarding a proposed bill's effect, they assert, are generally barred from petition and ballot summaries because of the bias they may introduce into the initiative process.

In the instant case, the summary's prediction (assuming it can be fairly characterized as such) as to the proposed bill's effect is amply supported by the text of the bill. In our view, applying the previously stated criteria, the summary's use of the language "would prevent" is neither misleading nor inaccurate.

The superior court's decision, as it relates to the impartiality and accuracy of the lieu-

human or governmental activity within which the measure falls. It must go beyond what would serve as the title to a statute. *Sears v. Treasurer and Receiver General,* 327 Mass. 310, 98 N.E.2d 621, 631 (1951).

7. Most of the courts that have dealt with challenges to initiative summaries utilize a deferential standard of review and refuse to invalidate a summary simply because they believe a better one could be written. The California Supreme Court holds that

[in] approaching the question as to whether the title [i.e., summary] so prepared is a proper one all legitimate presumptions should be indulged in favor of the propriety of the attorney-general's actions. Only in a clear case should a.title so prepared be held insufficient. Stated another way, if reasonable minds may differ as to the sufficiency of the title, the title should be held to be sufficient.

*Epperson v. Jordan,* 12 Cal.2d 61, 82 P.2d 445, 448 (1938). The Colorado Supreme Court cited this statement with approval in *Say v. Baker,* 137 Colo. 155, 322 P.2d 317, 319 (1958). The Arkansas Supreme Court followed suit in *Mason v. Jernigan,* 260 Ark. 385, 540 S.W.2d 851, 853 (1976). Even the Oregon Supreme Court, which often revises and rewords ballot summaries, has stated that it is "not concerned with whether the petitioner's proposed [summary] may be better or even whether [it] could devise a better one [itself]." *Priestly v. Paulus,* 287 Or. 141, 597 P.2d 829, 831 (1979).

Given these authorities and the fact that "there is no end of difficulty in choosing language which will awaken in the reader the very same thought that was in the mind of the writer." *State ex rel. Foreman v. Brown,* 10 Ohio St.2d 139, 226 N.E.2d 116, 123 (1967), we have concluded that it would be inappropriate for this court to adopt a substitution-of-judgment standard of review.

8. A contrary conclusion would require all initiatives that touch on matters that are regulated in some way by federal law to include a statement disclaiming any intent to change federal law or to bind the federal government.

tenant governor's petition and ballot summary, is AFFIRMED.*

* We announced this decision in an order issued on August 19, 1982, and indicated that this opinion would follow.