Fran ULMER, Lieutenant Governor of
the State of Alaska, Appellant,

v.

ALASKA RESTAURANT & BEVERAGE
ASSOCIATION (ARBA), Alaska Caba-
ret, Hotel, Restaurant & Retailers Asso-
ciation (CHARR), and Alaska Wine &
Spirit Wholesalers Association (AW-
SWA), Appellees.

No. S–9676.

Supreme Court of Alaska.

Nov. 9, 2001.

John B. Gaguine, Assistant Attorney General, and Bruce M. Botelho, Attorney General, Juneau, for Appellant.

Thomas P. Amodio, Foster Pepper Rubini & Reeves LLC, Anchorage, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

### I. INTRODUCTION

In 1999 Lieutenant Governor Fran Ulmer certified and prepared an initiative petition to increase the statutory excise tax on alcoholic beverages. Shortly thereafter, the Alaska Restaurant and Beverage Association, the Alaska Cabaret, Hotel, Restaurant and Retailers Association, and the Alaska Wine and Spirit Wholesalers Association (collectively "ARBA")[1] challenged the petition, claiming it was unconstitutional and that the petition summary was legally defective because it did not include the amount of the tax increase and it implied that the tax increase covered a group not included in the statute or in the initiative. Upon cross-motions for summary judgment, the superior court concluded the petition was constitutional but that the petition summary was legally defective. The initiative sponsors, who are not party to these proceedings, then abandoned the initiative by failing to timely file the petition with the lieutenant governor. The state now appeals the conclusion that its petition summary was defective.

Because the initiative sponsors are not party to these proceedings, because the initiative petition is dead, and because there is no current controversy as to whom the excise tax applies, we conclude that this case is moot. As no exception to the mootness doctrine applies in this case, we dismiss this appeal.

---

1. Throughout this opinion we refer to the appellees collectively as "ARBA," an acronym denoting the first named appellee, Alaska Restaurant and Beverage Association.

## II. FACTS AND PROCEEDINGS

Alaska Statute 43.60.010 imposes an excise tax on alcoholic beverages.[2] In early summer of 1999, an application for an initiative petition to substantially increase that tax was submitted to Lieutenant Governor Fran Ulmer. The initiative petition tracks the statutory language, except for the tax amounts. The initiative proposed changing the tax on malt beverages from $0.35 to $3.02 a gallon, the tax on wine or other beverages with up to twenty-one percent alcohol from $0.85 to $7.25 a gallon, and the tax on beverages with more than twenty-one percent alcohol from $5.60 a gallon to $37.60. The lieutenant governor certified the application in July 1999 and prepared the initiative petitions. Pursuant to AS 15.45.090 the initiative petition included a summary of the subject matter of the bill[3] as well as the complete text of the bill.[4] The summary of the petition reads as follows:

### Tax Increase on Alcoholic Beverages

Imposes a tax increase on persons who make or sell in the state malt alcoholic beverages, wine and hard or distilled alcoholic beverages, or consigns shipments of these beverages into the state. Should this initiative become law?

In August 1999 ARBA filed a timely complaint[5] for declaratory and injunctive relief against the lieutenant governor, arguing that the initiative petition was unconstitutional and that the lieutenant governor's petition summary was defective. In November ARBA filed a motion for summary judgment. The state opposed,[6] asking the superior court to grant summary judgment in its favor.

The superior court granted partial summary judgment in favor of the state, concluding that the initiative was constitutional. The court also granted partial summary judgment in favor of ARBA on the question of the validity of the petition summary, concluding that the petition summary was deficient as a matter of law, because it was both inaccurate (because it said the tax was to be imposed on out-of-state sales of alcoholic beverages produced in-state, contrary to the language of the initiative), and misleading (because it did not specify the amount of the tax increase). The final judgment enjoined the state from counting the signatures on those petitions bearing the defective summary.

ARBA filed a motion for attorney's fees. The state opposed ARBA's motion but did not file its own motion for attorney's fees. The superior court concluded that both parties had prevailed and that each was thus to bear its own costs and fees. It therefore did not award costs or fees to either side.

The initiative petition was not filed within the one-year period provided for in AS 15.45.140 and thus has no force or effect.[7] It consequently was not included on any ballot.

2. AS 43.60.010 provides:
 (a) Every brewer, distiller, bottler, jobber, retailer, wholesaler, or manufacturer who sells alcoholic beverages in the state or who consigns shipments of alcoholic beverages into the state, whether or not the alcoholic beverages are brewed, distilled, bottled, or manufactured in the state, shall pay on all malt beverages (alcoholic content of one percent or more by volume), wines, and hard or distilled alcoholic beverages, the following taxes:
 (1) malt beverages at the rate of 35 cents a gallon or fraction of a gallon;
 (2) wine or other beverages of 21 percent alcohol by volume or less, at the rate of 85 cents a gallon or fraction of a gallon; and
 (3) other beverages having a content of more than 21 percent alcohol by volume at the rate of $5.60 a gallon.

3. See AS 15.45.090(2).

4. AS 15.45.090(1) provides that the initiative petition must contain "a copy of the proposed bill if the number of words included in both the formal and substantive provisions of the bill is 500 or less."

5. AS 15.45.240 provides that "[a]ny person aggrieved by a determination made by the lieutenant governor under AS 15.45.010–15.45.220 may bring an action in the superior court to have the determination reviewed within 30 days of the date on which notice of the determination was given."

6. Because the lieutenant governor was sued in her official capacity, the parties and the superior court referred to her as "the state." This opinion does so as well.

7. AS 15.45.140 provides:
 The sponsors must file the initiative petition within one year from the time the sponsors received notice from the lieutenant governor that the petitions were ready for delivery to them, and

The state appeals the grant of summary judgment in favor of ARBA on the validity of the petition summary.

### III. STANDARD OF REVIEW

■ We resolve issues of standing and mootness using our independent judgment because, as matters of judicial policy, these are questions of law.[8]

### IV. DISCUSSION

The initiative sponsors failed to file the petition with the lieutenant governor as required by AS 15.45.140, and they are not parties to this appeal. While the state points out that the failure to file could render this appeal moot, it urges us to reach the merits on three bases.

First, the state argues that this matter is not moot because the "sponsors ceased their signature-gathering efforts" within the one-year submission period and, if this court reverses, the sponsors could then file a motion to have the one-year filing period tolled because of the superior court's erroneous ruling. The state next argues that if the case is moot, we should reach the merits of the case in order to determine the prevailing party for purposes of attorney's fees. Third, the state contends that this case falls within the public interest exception to the mootness doctrine. For the reasons explained below, we reject each argument.

### A. This Case Is Moot.

■ "[We] refrain from deciding questions where the facts have rendered the legal issues moot."[9] "A claim will be deemed moot if it has lost its character as a present,

live controversy. We have further held that [a] case is moot if the party bringing the action would not be entitled to any relief even if" it prevails.[10] Mootness can also occur when "a party no longer has a personal stake in the controversy and has, in essence, been divested of standing."[11] "The basic requirement for standing in Alaska is adversity."[12] Without adversity a case may be rendered moot.[13] Even in a declaratory judgment case such as this, where the rights or obligations of parties are delineated by the court, courts should avoid "becoming involved in premature adjudication of disputes that are uncertain to occur."[14]

The state itself characterizes its request for relief as providing guidance for the drafting of future petition summaries. This characterization necessarily admits that the present controversy is moot. The initiative is dead and there is no current controversy over whether AS 43.60.010 imposes the excise tax on in-state manufacturers of alcoholic beverages who sell their product out of state.

And, even if the state prevailed, no relief could be granted: The initiative is without force or effect; the initiative sponsors are not involved in these proceedings; and the state's tolling argument is unpersuasive, as discussed below.

■ The state argues that this case is not moot because the superior court's decision may have affected the sponsors' ability to gather the required number of signatures. It then proposes that if we reverse the superior court, the initiative sponsors could seek to have the one-year period tolled based on the superior court's erroneous decision. The

---

the petition must be signed by qualified voters equal in number to 10 percent of those who voted in the preceding general election and resident in at least two-thirds of the house districts of the state. If the petition is not filed within the one-year period provided for in this section, the petition has no force or effect.

**8.** See Kleven v. Yukon–Koyukuk School Dist., 853 P.2d 518, 525 n. 13 (Alaska 1993) (citing Bowers Office Prod. v. University of Alaska, 755 P.2d 1095, 1096 (Alaska 1988)).

**9.** O'Callaghan v. State, 920 P.2d 1387, 1388 (Alaska 1996) (internal quotation marks omitted).

**10.** Gerstein v. Axtell, 960 P.2d 599, 601 (Alaska 1998) (internal quotation marks and citations omitted) (brackets in original).

**11.** 15 Martin H. Redish, Moore's Federal Practice ¶ 101.90 (3d ed.1998).

**12.** Trustees for Alaska v. State, 736 P.2d 324, 327 (Alaska 1987).

**13.** See Redish, Moore's Federal Practice ¶ 101.90.

**14.** Id. at § 101.80[1].

state concedes that there is no provision in the initiative statutes for tolling of the one-year period for filing, but it sees a "live controversy" remaining based on the "special circumstances" of this case and the initiative sponsors' theoretical ability to have the doctrine of equitable tolling applied to their collection of signatures.

However, the initiative sponsors have not made such an argument and there is no evidence that they intend to do so. The state's speculation about what other parties may choose to do in the future is exactly the sort of indeterminacy that the mootness doctrine was developed to avoid. The state cannot point to any legal remedy that it would be able to achieve through consideration of this appeal, so its argument is moot.

 We reach the merits of a moot case if an exception to the mootness doctrine applies, such as the possibility that appellate review changes the status of the prevailing party and thus an award of attorney's fees, or because the public interest exception applies. There is no legal basis to conclude that the merits of a moot case can be reached because deciding it one way might allow a party who is no longer participating in the proceedings to initiate an action to toll the statutory one-year filing period—an action that was not initiated prior to the appeal and that may not even have been considered by the initiative sponsors.

Because there is no present, live controversy and the state no longer has a stake in the outcome of this dispute and thus is divested of standing, we conclude that this case is moot.

We turn now to the exceptions to the mootness doctrine.

B. *The Issue of Attorney's Fees Does Not Warrant Consideration of the Merits of this Case.*

 The state argues that even though this matter is moot, we should nonetheless reach the merits for purposes of attorney's fees, relying on *LaMoureaux v. Totem Ocean*

*Trailer Express, Inc.*[15] The state argues that if we reverse the decision of the superior court, then the state will be the prevailing party and, as such, will be entitled to an award of attorney's fees.

ARBA notes that there is no attorney's fee issue pending in this case and argues that there is no support for reaching the merits on this basis in this case. We agree.

 In *LaMoureaux,* we stated that a party's ability to appeal is not based on a distinction between an award of monetary damages or an award of attorney's fees.[16] Thus, where a party has been awarded attorney's fees, but the case is otherwise moot, we will reach the merits to determine who prevailed for purposes of attorney's fees.[17]

But in this case, the superior court did not award attorney's fees to either side. ARBA filed a motion for attorney's fees. The state did not. In the state's opposition to ARBA's motion, it explicitly stated its position as to attorney's fees:

> [ARBA] simply cannot be seen as the prevailing parties here. Indeed, the [state] was the real prevailing party. However, [the state] is not seeking an award of costs and fees, instead taking the position that neither side prevailed, and that each should bear its own costs and attorney's fees.

The state cannot now argue that because the superior court might be reversed on appeal that it somehow has a right to an award of attorney's fees from the court below.

Because there was no award of attorney's fees that would be affected by appellate review and the issue has not been preserved for appeal, we decline to reach the merits on this basis.

C. *The Public Interest Exception to the Mootness Doctrine Does Not Apply.*

 Applicability of the public interest exception requires consideration of three factors: (1) whether the disputed issues are

---

**15.** 651 P.2d 839, 840 n. 1 (Alaska 1982).

**16.** *See id.*

**17.** *See id.; see also Hickel v. Southeast Conference,* 868 P.2d 919, 928 (Alaska 1994).

capable of repetition, (2) whether the mootness doctrine, if applied, may repeatedly circumvent review of the issues, and (3) whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine.[18] "None of these factors is dispositive; each is an aspect of the question of whether the public interest dictates that a court review a moot issue. Ultimately, the determination of whether to review a moot question is left to the discretion of the court." [19]

██ The state takes a broad view of the applicability of the public interest exception to this case, arguing that review on the merits here will provide guidance for future petition summary cases [20] and that, as evidenced by this case, the issue can evade review.

ARBA, on the other hand, frames the issue narrowly, arguing that a challenge to the adequacy of a petition summary is "a very fact-dependent determination based on the wording of the initiative itself and the specific wording of the summary," circumstances not likely to be repeated. In addition, given the short period allowed for filing challenges to the lieutenant governor's certification, issues of this type have not tended to evade review.

We agree with ARBA. This is an appeal concerning the summary of a voter initiative proposal provided by the lieutenant governor. Although such appeals typically must be decided by election day to avoid becoming moot,[21] there is no reason to believe that we cannot resolve such appeals in a timely fashion. Indeed, we have frequently done that.[22] The election laws require that initiatives be submitted and approved well in advance of the actual election,[23] and challenges to the lieutenant governor's determination must be brought within thirty days of notice of the lieutenant governor's action.[24] This allows time for legal challenges to the certification of the proposal to be timely resolved. The cases where such challenges have been timely resolved belie the state's argument that the issues in this appeal will evade review.[25]

We agree that providing guidance to the courts and the lieutenant governor as to what constitutes a sufficient petition summary might in another case be important enough to the public interest to justify overriding the mootness doctrine. But in this case there is nothing to be gained from review of the merits. We have already set forth the test for the sufficiency of a petition summary and the criteria for review.[26] Review of the mer-

---

18. See Legislative Council v. Knowles, 988 P.2d 604, 606 (Alaska 1999).

19. Kodiak Seafood Processors Ass'n v. State, 900 P.2d 1191, 1196 (Alaska 1995) (internal citation omitted).

20. The state contends that the issues for review include "whether a very minor inaccuracy in a petition summary renders the summary invalid, and how much detail the lieutenant governor is required to include in a summary."

21. On occasion, we have ordered an election stayed pending final appeal of a certification decision. See, e.g., Faipeas v. Municipality of Anchorage, 860 P.2d 1214 (Alaska 1993).

22. See McAlpine v. University of Alaska, 762 P.2d 81 (Alaska 1988) (expediting appeal and resolving case before November election); Burgess v. Miller, 654 P.2d 273, 277 n. * (Alaska 1982) (announcing decision in an order issued August 19, 1982, in advance of November election).

23. See AS 15.45.190.

24. See AS 15.45.240.

25. See, e.g., Burgess v. Alaska Lieutenant Governor Terry Miller, 654 P.2d 273, 274 (Alaska 1982). There, the challenge to the petition summary did not occur until after the initiative sponsors had collected the requisite number of signatures, filed the petition with the lieutenant governor, and been informed that the proposed language would be placed on the ballot. See id. Nonetheless, the issue was resolved before the election by this court.

Numerous cases from other states have addressed the adequacy of petition summaries, supporting the argument that such issues do not repeatedly evade review. See, e.g., Mason v. Jernigan, 260 Ark. 385, 540 S.W.2d 851 (1976); Hope v. Hall, 229 Ark. 407, 316 S.W.2d 199 (1958); Epperson v. Jordan, 12 Cal.2d 61, 82 P.2d 445 (1938); In re Second Initiated Constitutional Amendment Respecting the Rights of the Pub. of Uninterrupted Serv. by Pub. Employees of 1980, 200 Colo. 141, 613 P.2d 867 (1980); Say v. Baker, 137 Colo. 155, 322 P.2d 317 (1958); Priestley v. Paulus, 287 Or. 141, 597 P.2d 829 (1979).

26. See Burgess, 654 P.2d at 275–76.

its in this case would add nothing to that test—it would only address a now-dead proposal to increase the alcoholic beverage tax by percentages that may not ever be proposed again. As there is no current controversy related to those upon whom the tax would actually be imposed, an opinion on that issue would be purely advisory. We therefore conclude that the public interest exception to the mootness doctrine does not apply in this case.

## V. CONCLUSION

Because this case is moot and no exception to the mootness doctrine applies, this appeal is DISMISSED.