**ALASKANS FOR EFFICIENT GOVERN-MENT, INC., an Alaskan non-profit corporation, Robert J. Monson and Mark Chryson, Appellants,**

v.

**STATE of Alaska and Fran Ulmer, in her Official Capacity as the Lieutenant Governor of Alaska, Appellees.**

No. S–10633.

Supreme Court of Alaska.

Aug. 7, 2002.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

EASTAUGH, Justice, with whom CARPENETI, Justice, joins, dissenting.

### Order

IT IS ORDERED:

1. This expedited appeal concerns a challenge to the lieutenant governor's ballot summary for an initiative proposing to relocate state legislative sessions to the Matanuska–Susitna Borough. In August 2001 sponsors of the relocation initiative filed a complaint with the superior court seeking a declaratory judgment that the lieutenant governor's ballot summary was neither "true" nor "impar-

tial" as required by AS 15.45.180(a).[1] The superior court granted summary judgment in favor of the state, ruling that the sponsors had failed to show that the summary was either untrue or biased. The sponsors appeal. Because we find the last sentence of the summary to be inaccurate and potentially misleading, we reverse and remand with directions to amend the summary's language.

2. The relocation initiative has two major features. First, it would amend AS 24.05.090, which requires legislative sessions to be held in the state capital, Juneau. The initiative would move legislative sessions from the capital to a location within the Matanuska–Susitna Borough (or in Anchorage until facilities in the Mat–Su Borough are available). Second, the relocation initiative would amend the "FRANK Initiative," an initiative enacted in 1994 as Ballot Measure 5 and currently codified in AS 44.06.050–44.06.060.[2]

3. The FRANK initiative requires that, before state money may be expended to relocate the capital or the legislature, voters must approve all bondable costs of the move;[3] it also provides that the legislature shall establish a commission to determine costs required by an initiative or law that would relocate any present functions of state government;[4] and it requires this commission to determine all bondable and total costs of relocation.[5] A prefatory section of the FRANK initiative describes its several purposes, including "to guarantee to the people their right to know and to approve in advance all costs of relocating the capital or the legislature."[6]

4. The relocation initiative would change these provisions of the FRANK initiative—including its statement of purposes—by deleting references to relocation of the legislature, thereby making it possible to relocate the legislature without appointing a commission, without having the commission determine the bondable and total costs of the move, and without requiring the voters to approve the total bondable costs before money is spent on the move.

5. Alaska Statute 15.45.180 requires the lieutenant governor, with the assistance of the attorney general, to prepare a "true and impartial" ballot summary for initiatives; the

1. AS 15.45.180(a) provides:
   If the petition is properly filed, the lieutenant governor, with the assistance of the attorney general, shall prepare a ballot title and proposition. The ballot title shall, in not more than six words, indicate the general subject of the proposition. The proposition shall, in not more than 100 words, give a true and impartial summary of the proposed law.

2. The three statutes comprising the FRANK initiative provide as follows:
   AS 44.06.050 Purpose of AS 44.06.050—44.06.060.
   The purpose of AS 44.06.050—44.06.060 is to guarantee to the people their right to know and to approve in advance all costs of relocating the capital or the legislature; to insure that the people will have an opportunity to make an informed and objective decision on relocating the capital or the legislature with all pertinent data concerning the costs to the state; and to insure that the costs of relocating the capital or the legislature will not be incurred by the state without the approval of the electorate.
   AS 44.06.055 Relocation expenditures.
   State money may be expended to relocate physically the capital or the legislature from the present location only after a majority of those voting in a statewide election have approved a bond issue that includes all bondable costs to the state of the relocation of a functional state legislature or capital to the new site over the twelve-year period following such approval. The commission established in AS 44.06.060 shall determine all bondable costs and total costs including, but not limited to, the costs of moving personnel and offices to the relocation site; the social, economic, and environmental costs to the present and relocation sites; and the costs to the state of planning, building, furnishing, using, and financing facilities at least equal to those provided by the present capital city.
   AS 44.06.060 Commission.
   The legislature shall establish a commission composed of nine members, including a chairperson and two persons from each judicial district, appointed by the governor and confirmed by the legislature, to determine the costs required by initiatives or legislative enactments authorizing relocation of any of the present functions of state government.

3. AS 44.06.055.

4. AS 44.06.060.

5. AS 44.06.055.

6. AS 44.06.050.

attorney general proposed the following summary for the relocation initiative:

> This bill would move all sessions of the state legislature to the Matanuska–Susitna (Mat–Su) Borough. If facilities fit for these sessions cannot be found in that borough, sessions would be held in Anchorage until facilities are available in the Mat–Su Borough. The bill would repeal the requirements that before the state can spend money to move the legislature, the voters must know the total costs as determined by a commission, and approve a bond issue for all bondable costs of the move.

6. The initiative's sponsors did not object to the summary's first two sentences but took issue with its final sentence, which summarizes the changes the relocation initiative would make to the FRANK initiative. The sponsors maintained that this sentence is neither true nor impartial because it emphasizes how the relocation initiative would change one of the FRANK initiative's several purposes, while neglecting to describe accurately how the FRANK initiative itself would actually be changed. "This language is not neutral," the sponsors complained, "in that it has the effect of stating that the proponents of the initiative want to keep the costs of the legislative move secret."

7. The lieutenant governor approved the summary as initially proposed. The superior court affirmed the lieutenant governor's decision. The sponsors now appeal.

8. Renewing their initial objection to the proposed summary, the sponsors complain on appeal that "[t]he ballot language makes it appear that the sponsors are trying to prevent the voters from knowing the costs of the move." The sponsors suggest that this appearance is misleading and that the summary's last sentence conveys this appearance

in two ways. First, the sponsors claim that the summary overemphasizes the relocation initiative's effect on only one of the FRANK initiative's stated purposes—guaranteeing that voters have a right to know the costs of a move—by saying that the initiative would repeal the requirement that the voters "must know the total costs" of the move. In the sponsors' view, the summary should ignore proposed changes to the FRANK initiative's purpose section "because the purpose section is not an enactment of positive law, but is merely legislative history." Second, the sponsors contend, the summary too narrowly focuses on only one of the ways in which the relocation initiative would amend the FRANK initiative: the summary states that the initiative would repeal the requirement that voters approve bondable costs of the move but fails to make clear that the initiative also would repeal the requirements that a commission would be established and that this commission would have to determine the total and bondable costs of relocation.[7]

9. In response, the state argues that the summary's focus on removing the people's right to know the costs of the move is neither misleading nor biased. The state contends that this focus is accurate because the "voter's right to know the total costs" of relocation is one of the specific purposes of the FRANK initiative that the relocation initiative would repeal. Further, the state asserts, the focus is impartial because the relocation initiative's provisions repealing the existing requirements that the costs of the move be determined by a commission and then approved by voters would indeed have the effect of "remov[ing]" the guarantee that the voters know the costs of a legislative session move." Finally, the state points out that the summary's language describing the FRANK initiative's purpose of guaranteeing people the right to know the cost of relocat-

---

7. For the first time in their reply brief, the sponsors raise a third argument. They argue that by stating that the initiative repeals a requirement that the voters "approve a bond issue for all bondable costs of the move," the language inaccurately implies that it removes the constitutional requirement that voters ratify all bonds issued by the state, when the initiative only seeks to repeal the requirement of voter approval for all bondable costs of moving the legislature. We

decline to address this argument because it was not raised either before the trial court or in the sponsors' opening brief on appeal. *See, e.g., Kellis v. Crites,* 20 P.3d 1112, 1114–15 (Alaska 2001) (holding that argument not raised before the trial court or in opening brief on appeal will be considered waived); *Nenana City Sch. Dist. v. Coghill,* 898 P.2d 929, 934 (Alaska 1995) ("[A]n argument not raised in a suit before the trial court will not be considered on appeal.").

ing the legislature simply tracks the language included in the FRANK initiative's ballot summary, which presumably qualified as a true and impartial description when the FRANK initiative was proposed in 1994.

■■■■ 10. In reviewing the adequacy of a lieutenant governor's ballot summary we apply a "deferential standard of review."[8] This means that we will not invalidate the summary simply because we believe a better one could be written; instead, "the lieutenant governor's summary [will] be upheld unless we [cannot] reasonably conclude that the summary [is] impartial and accurate."[9] And we must place "[t]he burden ... upon those attacking the summary to demonstrate that it is biased or misleading."[10]

11. We have addressed the adequacy of a lieutenant governor's ballot summary in only one previous case, *Burgess v. Alaska Lieutenant Governor*. There, we turned to other jurisdictions to help delineate attributes of the "true and impartial" summary required by AS 15.45.180.[11] We agreed with the Colorado Supreme Court that a petition summary must be "a fair, concise, true and impartial statement of the intent of the proposed measure. The summary may not be an argument for or against the measure, nor can it be likely to create prejudice for or against the measure."[12] We also quoted approvingly the Arkansas Supreme Court's statement that a petition summary should be "complete enough to convey an intelligible idea of the scope and import of the proposed law, and that it ought to be free from any misleading tendency, whether of amplification, of omission, or of fallacy, and that it must contain no partisan coloring."[13] And finally, we drew upon a definition of "summary" proffered by the Supreme Judicial Court of Massachusetts, which states, in relevant part:

> The word carries with it the idea that, however much the subject matter may be condensed, the sum and substance of it must remain. No doubt details may be omitted or in many instances covered by broad generalizations, but mention must be made of at least the main features of the measure. And the summary must be "fair"; that is to say, it must not be partisan, colored, argumentative, or in any way one-sided, and it must be complete enough to serve its purpose of giving the voter who is asked to sign a petition or who is present in a polling booth a fair and intelligent conception of the main outlines of the measure.[14]

■■■■ 12. Our discussion of truthfulness and impartiality in *Burgess*, as well as more recent discussion of the issue in decisions by other courts, indicates that the basic purpose of the ballot summary is to enable voters to reach informed and intelligent decisions on how to cast their ballots—decisions free from any partisan suasion.[15] To accomplish this

---

**8.** *Burgess v. Alaska Lieutenant Governor*, 654 P.2d 273, 276 (Alaska 1982).

**9.** *Faipeas v. Municipality of Anchorage*, 860 P.2d 1214, 1217 (Alaska 1993); *see also Burgess*, 654 P.2d at 276 n. 7.

**10.** *Burgess*, 654 P.2d at 276.

**11.** *Id.* at 275–76.

**12.** *Id.* at 275 (quoting *In re Second Initiated Constitutional Amendment Respecting the Rights of the Public to Uninterrupted Service by Public Employees of 1980*, 200 Colo. 141, 613 P.2d 867, 869 (1980) (block quotation)).

**13.** *Id.* (quoting *Hope v. Hall*, 229 Ark. 407, 316 S.W.2d 199, 201 (1958) (block quotation)).

**14.** *Id.* at 275 n. 6, 316 S.W.2d 199 (quoting *Sears v. Treasurer and Receiver Gen.*, 327 Mass. 310, 98 N.E.2d 621, 631 (1951) (block quotation)).

**15.** *See, e.g., Fairness & Accountability in Ins. Reform v. Greene*, 180 Ariz. 582, 886 P.2d 1338, 1346 (1994) ("[T]he purpose of the required analysis is to assist voters in rationally assessing an initiative proposal by providing a fair, neutral explanation of the proposal's contents and the changes it would make if adopted.... The analysis and description must eschew advocacy—argument—for or against the proposal's adoption."); *Gaines v. McCuen*, 296 Ark. 513, 758 S.W.2d 403, 406 (1988) ("The ballot [summary] must accurately reflect the general purposes and fundamental provisions of the proposed initiative, so that an elector does not vote for a proposal based on its description in the ballot [summary], when, in fact, the vote is for a position he might oppose."); *Advisory Opinion to Attorney Gen. re Term Limits Pledge*, 718 So.2d 798, 803 (Fla. 1998) (holding that the purpose of requiring the explanatory statement "is to provide fair notice of the content of the proposed amendment so that the voter will not be misled as to its purpose, and can cast an intelligent and informed ballot") (internal quotation omitted; citation omitted).

goal the summary must describe "the main features of the measure" and be "complete enough to serve its purpose"; and it must do so without being "partisan, colored, argumentative, or in any way one-sided." [16] The summary need not recite every detail of the proposed measure; but neither may it omit a measure's more important points, for "if the information would give the elector 'serious grounds for reflection' it is not a mere detail, and it must be disclosed." [17]

█ 13. Applying these principles to the merits of this case, we reject at the outset the sponsors' initial contention that it is impermissible for the summary to describe changes that the relocation initiative would make to the FRANK initiative's purpose section. As the state correctly notes, the relocation initiative actually does propose to amend the purpose section; accordingly, it is neither per se untrue nor biased for the summary to describe these amendments, so long as the description itself is accurate and unbiased when read in the context of the summary as a whole. The critical question, then, is not whether the summary's second sentence permissibly addresses the FRANK initiative's purposes: rather, it is whether the sentence describes the relocation initiative's main effects on the FRANK initiative in a way that omits nothing of material importance and is neither partisan nor one-sided.

14. Turning to this question, we find merit in the sponsors' primary claim that the summary falls short of the mark; for in our view, the summary fails to adequately describe the actual changes that the relocation initiative proposes to make and casts the initiative's purpose in an unnecessarily negative light.

15. As already noted, the FRANK initiative currently provides that, before state money could be expended on moving the legislature, a commission would have to be appointed; it would need to determine the total and bondable costs of the move; and the voters would then need to approve the total bondable costs of the relocation. [18] In addition to negating the FRANK initiative's statement of purpose insofar as it affects relocation of the legislature, the relocation initiative would repeal each of these affirmative requirements. Yet the summary describes only one of these changes: "The bill would repeal the requirements that before the state can spend money to move the legislature, the voters must know the total costs as determined by a commission, and approve a bond issue for all bondable costs of the move." Apart from prominently stating the relocation initiative's negative effect on the existing law's purpose, this summary describes explicitly only the last of the three affirmative requirements that the initiative proposes to repeal (voter approval), while compressing the first and second (the need to appoint a commission and the need to have that commission determine the costs of relocation) into a brief, inferential mention—"as determined by a commission."

16. This cryptic phrase is ambiguous and does not fairly describe the initiative's main features. When combined with its concrete statement describing the initiative's repeal of the existing law's purpose of revealing the costs of a move to the electorate, the summary's past-tense phrasing—"as determined by a commission"—can easily be read to mean that an existing commission

**16.** *Mass. Teachers Ass'n v. Sec'y of the Commonwealth,* 384 Mass. 209, 424 N.E.2d 469, 480 (1981); *Sears,* 98 N.E.2d at 631.

**17.** *Gaines,* 758 S.W.2d at 406 (internal citation omitted); *see also People v. Flores,* 178 Cal. App.3d 74, 223 Cal.Rptr. 465, 470 (1986) ("[G]enerally, the title and summary preceding an initiative need not contain a complete catalog or index of all provisions within the initiative."); *Tinsley v. Superior Court of San Mateo,* 150 Cal. App.3d 90, 197 Cal.Rptr. 643, 654 (Cal.App. 1983) ("It has been consistently held that a ballot summary need not contain a reference to 'auxiliary or subsidiary' matters; a statement of the

major objectives or 'chief points' of the measure is satisfactory."); *Mass. Teachers Ass'n,* 424 N.E.2d at 480 (" 'No doubt details may be omitted or in many instances covered by broad generalizations, but mention must be made of at least the main features of the measure.' ") (quoting *Sears,* 98 N.E.2d at 621); *Mun. Servs. Corp. v. Kusler,* 490 N.W.2d 700, 703 (N.D.1992) ("[T]he ballot title need not encompass every possible effect of the measure nor must it convey possible problems that may arise upon implementing the measure.").

**18.** *See* AS 44.06.055–.060.

has already determined the costs and that the initiative seeks to keep them secret. And conversely, when read together with this abbreviated statement of the initiative's effects on the existing law's actual requirements, the summary's prominent attention to the FRANK initiative's purpose and its description of that purpose as a beneficial imperative—"the voters must know the total costs" of a move—hardly seem neutral. In short, the current summary is potentially misleading and does not accurately and fairly describe the initiative. Accordingly, we conclude that it is not true and impartial.

17. We further conclude, however, that the summary's last sentence could be revised to reflect a true and accurate statement of the relocation initiative by substituting "must be informed of" for "must know" and "as would be determined by" for "as determined by." With these changes, the last sentence would read: "The bill would repeal the requirements that before the state can spend money to move the legislature, the voters must *be informed of* the total costs as *would be* determined by a commission, and approve a bond issue for all bondable costs of the move." (Proposed changes emphasized.) If the summary's last sentence were so revised, we believe that it would not lend itself to being read as taking a negative view of the initiative's purpose and would describe with minimally adequate clarity the initiative's effects of repealing the existing law's express provisions requiring that, before money is spent on relocating the legislature, a commission would need to be appointed; that it would have to determine the total and bonda-

ble costs of the move; and that the voters would then be required to approve the move's bondable costs.[19]

18. For these reasons, we find that the ballot summary fails to meet the requirements of AS 15.45.180. We therefore REVERSE the superior court's summary judgment order, and REMAND to the lieutenant governor with directions to revise the summary as necessary to comply with this order.

Entered at the direction of the court.

EASTAUGH, Justice, with whom CARPENETI, Justice, joins, dissenting.

I would affirm. Applying the appropriate deferential standard of review to the language of the ballot summary and considering the appellants' arguments, I think that the language of the ballot summary satisfies article XI, section 3 of the Alaska Constitution, AS 15.45.090, and AS 15.45.180, and that the changes this court proposes are, at most, unnecessary improvements.

Our review is deferential.[1] Our deference should derive in part from the expertise inherent in developing language that adequately summarizes ballot propositions and that voters can easily understand. The responsibility for developing that language is vested by constitution and statute in the lieutenant governor.[2] We should assume that the executive branch by exercising that responsibility has developed some institutional skill in preparing summaries. In comparison, the judicial branch only infrequently reviews these summaries.[3] Alaska Statute 15.60.005

---

**19.** While this language reflects our view of the least intrusive modification that would be permissible in terms of the numbers of additional words that would be needed to make the current summary reflect a true and impartial description of the initiative, we have not attempted to rate the wording under AS 15.60.005's readability standards and do not purport to require the lieutenant governor to adopt this precise wording. The lieutenant governor is free to make appropriate adjustments to the existing language necessary to conform to AS 15.60.005's standards as long as the substance of our proposed changes is maintained.

**1.** Order at 735. *See Burgess v. Alaska Lieutenant Governor*, 654 P.2d 273, 276 (Alaska 1982). As the court's order observes, "This means that we

will not invalidate the summary simply because we believe a better one could be written; instead, 'the lieutenant governor's summary [will] be upheld unless we [cannot] reasonably conclude that the summary [is] impartial and accurate.' " Order at 735.

**2.** Alaska Const. art. XI, § 4 ("The lieutenant governor shall prepare a ballot title and proposition summarizing the proposed law...."); AS 15.45.180(a) ("[T]he lieutenant governor, with the assistance of the attorney general, shall prepare a ballot title and proposition.").

**3.** "We have addressed the adequacy of a lieutenant governor's ballot summary in only one previous case...." Order at 735.

strongly implies that technical expertise is involved in crafting summaries. That statute specifies a readability test for certain election materials,[4] including this ballot summary, and precludes the courts from enjoining the conduct or results of an election for a failure to satisfy the test.[5] The current proposition apparently satisfies this statute. This court does not even attempt to determine whether the summary as modified will satisfy AS 15.60.005, and instead leaves it to the lieutenant governor to apply that statute on remand.[6] The expertise the executive branch will bring to that exercise helps confirm why our review should be deferential.

The court's order acknowledges the deferential standard of review,[7] but it is hard to square that acknowledgment with the modifications the order proposes. They appear, at best, to be mere improvements, not changes essential to remedy any alleged defects. They certainly do not adopt the intrusive (and unjustified) changes the appellants propose. The subtlety of the court's changes suggests that the court is not being as deferential as it should be.

As to the merits, I agree with the decision of the superior court. The ballot summary focuses on the core effect of the present proposition: it will overturn the fundamental purpose of the FRANK Initiative. That fundamental purpose is codified as AS 44.06.050, and was not merely part of the initiative's legislative history. It guarantees to the people "their right to know and to approve in advance" all costs of relocating the capital or the legislature.[8] The current ballot summary approved by the lieutenant governor appropriately described this core right and made it a prominent part of the summary.

The objections raised by Alaskans for Efficient Government, Inc., are unpersuasive. The changes they propose would make the current summary markedly less truthful and less impartial. Their changes would simply ignore the core purpose of the FRANK Initiative, the guarantee of the right of people to know all relocation costs. The resulting inaccuracy and partiality consequently inhering in the language advanced by Alaskans for Efficient Government, Inc., justify rejection of the changes they propose.

The court's order concludes that the summary does not adequately describe the changes the initiative proposes to make and that it casts the initiative's purpose in an unnecessarily negative light.[9] The order also concludes that the current summary is not "true and impartial." [10]

I disagree with these conclusions for several reasons that need little elaboration. First, the summary is essentially true and impartial. Second, it adequately describes the changes the present proposition would make; the current summary certainly does as much now in that regard as it will if it is changed as the court's order proposes. Third, a summary limited to 100 words must necessarily be a summary. It is sufficient if it captures the essential elements of the proposal, and it did so here. Finally, the current summary

---

4. AS 15.60.005 states:
   Readability of certain election materials.
   (a) The policy of the state is to prepare a ballot proposition that is clear, concise, and easily readable. The form of each ballot proposition shall be scored under (c) of this section. The policy of the state is to prepare a ballot proposition that is scored at approximately 60.
   (b) Each neutral summary prepared for the voter's pamphlet shall be scored under (c) of this section. The policy of the state is to prepare a neutral summary that is scored at approximately 60.
   (c) A ballot proposition or neutral summary shall be scored using the following procedures:
   (1) disregard numbers;
   (2) multiply the average sentence length in words by 1.015;
   (3) multiply the average number of syllables for each 100 words by .846;

(4) subtract the total of (2) and (3) from 206.835.
   (d) A court may not enjoin the conduct or results of an election for a failure to comply with (a) or (b) of this section.

5. AS 15.45.180 requires a ballot summary to comply with AS 15.60.005.

6. Order at 737 n. 19.

7. Order at 735.

8. AS 44.06.050.

9. Order at 736–737.

10. Order at 737.

does not cast the proposition in a negative light; the only possible theory that it does so requires us to assume that the word "as" in the last sentence of the summary was intended to make it appear that the proposition would conceal from voters information that already exists generated by a commission that already exists.[11] This theory places extraordinary weight on an innocuous little word. The summary correctly described the essence of the proposition's purpose. Although adding the words "would be" will not diminish the current summary's impartiality, doing so will not enhance its impartiality either.

The current summary is not deficient, nor are the improvements the court's order proposes critical to understanding the present proposition. I would therefore affirm.

11. Thus, the order states that, "When combined with its concrete statement describing the initiative's repeal of the existing law's purpose of revealing the costs of a move to the electorate, the summary's past-tense phrasing—'as determined by a commission'—can easily be read to mean that an existing commission has already determined the costs and that the initiative seeks to keep them secret." Order at 736–737. I think the summary cannot "easily be read" to have that meaning.

The sponsors' appellate briefs do not seem to argue that this language is susceptible to the reading the court attributes to it. Perhaps the court's reading derives from appellants' relatively cryptic argument that implies that the sponsors have been unfairly blamed for trying to hide the relocation costs. But the ballot proposition, if it passes, will do away with the need to appoint a public commission charged with determining relocation costs. Given this purpose, it seems incorrect to argue that the summary is inaccurate. And this purpose also seems to be inconsistent with an argument implying that it is unfair to blame the appellants for trying to prevent voters from knowing the costs of a relocation.