**Henry J. BAUER, Appellant,**

v.

**STATE of Alaska, DEPARTMENT OF CORRECTIONS, Appellee.**

No. S–12789.

Supreme Court of Alaska.

Oct. 16, 2008.

Henry J. Bauer, Seward, pro se.

Marilyn J. Kamm, Assistant Attorney General, and Talis J. Colberg, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and WINFREE, Justices.

*OPINION*

WINFREE, Justice.

## I. INTRODUCTION

The State of Alaska, Department of Corrections (DOC) found inmate Henry J. Bauer guilty of disobeying a direct order and sentenced him to fifteen days of segregation time. Bauer appealed to the superior court. The court dismissed the appeal as moot after DOC represented that it would provide Bauer a new administrative hearing. But instead, DOC went "one step further" and reduced the original disciplinary incident report to an "informational" item in Bauer's file. According to DOC, this was a remedial action that obviated the need for a rehearing. Bauer argues that this is inadequate relief because he would have been entitled to have all record of the underlying incident removed from his file if he successfully defended against the original disciplinary charge. We remand for consideration of whether the relief Bauer may obtain through his administrative appeal would be greater than what DOC has already provided. If Bauer may obtain greater relief than he has been afforded, his appeal should not be dismissed as moot.

## II. FACTS AND PROCEEDINGS

Bauer has been an inmate at Spring Creek Correctional Center (SCCC) since 1996. In December 2005 SCCC staff summoned Bauer, then a member of the prison's biohazard cleaning crew, to clean a blood spill. In light of safety protocol requiring that cleaning be completed by two trained crew members, Bauer requested the assistance of another crew member. A trainee was available to assist, but without another trained crew member present, Bauer refused to clean up the blood spill. Bauer received a disciplinary notice for failing to comply with a direct order.

Bauer pled not guilty. His defense was that the conditions under which he was or-

dered to clean up the spilled blood were unsafe and that complying with the direct order would have required him to violate his safety training. Bauer argued that these conditions rendered the order illegal.

Bauer was appointed a hearing advisor to prepare for a disciplinary hearing. Bauer identified the witnesses he wanted to have testify, and he claims his advisor told him the witnesses would be made available. No witnesses appeared at the disciplinary hearing; Bauer was told this was due to his failure to submit a written request. Bauer's hearing advisor had interviewed the witnesses, and he recounted their statements at the hearing.

The disciplinary hearing officer concluded that the available trainee would have been capable of assisting Bauer and that Bauer had effectively requested a third crew member rather than a second. The hearing officer found Bauer guilty of disobeying a direct order and imposed thirty days' segregation. Bauer appealed to the prison superintendent. The acting superintendent denied Bauer's appeal but reduced the sanction to fifteen days' segregation, which Bauer was required to serve despite his right of appeal to the superior court.

Bauer appealed to the superior court, alleging constitutional violations in the disciplinary hearing process.[1] Repeatedly citing lack of "adequate time" to prepare a responsive brief, DOC was granted three consecutive thirty-day extensions of the filing deadline. When DOC moved for a fourth extension, the court granted the request over Bauer's objection but noted it would be the final extension.

DOC did not submit a brief, moving instead to dismiss the appeal as moot because SCCC's acting superintendent had "reconsidered [Bauer's] appeal from the final agency decision and ordered a re-hearing." Within days, DOC notified Bauer that the original disciplinary report had been reduced to "in-

---

1. On appeal, Bauer argued that: (1) he was deprived of his constitutional rights to confront his accusers and to call witnesses to testify on his behalf; (2) the prison relied on evidence not properly in the record; and (3) the prison failed to issue a written disciplinary hearing report based on findings of fact that were consistent with the record. Bauer also asserted that the disciplinary hearing report was inadequate and that the direct order itself was illegal and in violation of his right to a safe environment.

formational" and that the "scheduled disciplinary hearing ... [would] not be held."

Bauer then opposed DOC's motion to dismiss the appeal, contending that: (1) DOC was acting in "bad faith";[2] (2) DOC's actions did not "cure the constitutional defect[s]" at issue in the appeal; (3) DOC no longer had jurisdiction once the appeal was initiated in superior court; and (4) the appeal was not moot because a "live controversy and collateral consequences continued to exist." Shortly thereafter, Bauer filed an application for a default judgment.

In its reply, DOC asserted that it had "acted in good faith once it was advised that at least one of the appeal issues likely had merit." DOC contended that "[t]he only relief available to Bauer in this appeal was ... a remand for a new hearing. DOC has now gone one step further, and reduced the report to an informational report. Bauer has no right to appeal from this reduction...."

The superior court granted DOC's motion to dismiss. The court signed DOC's proposed order that the appeal was moot because SCCC's acting superintendent had granted reconsideration of Bauer's appeal and had ordered a rehearing. The court did not address DOC's reduction of the original disciplinary report to an "informational" item in Bauer's file, the cancellation of the rehearing, or Bauer's request for a default judgment.

Bauer appeals, asserting that the superior court erred in dismissing his appeal and in failing to enter a default judgment against DOC.

## III. DISCUSSION

### A. Bauer's Appeal May Not Be Moot.

 Courts generally decline to decide a question of law where the facts of the case have rendered the issue moot. "A claim is moot where a decision on the issue is no longer relevant to resolving the litigation, or where it has lost its character as a 'present, live controversy,' that is, where a party bringing the action would not be entitled to any relief even if he or she prevailed."[3] Bauer's appeal is not moot if he might be entitled to greater relief through appeal than DOC already has provided. Review of applicable prison policies and procedures suggests this may be the case.

When a prison staff member witnesses or has knowledge of an instance of prisoner misconduct, that staff member must write a report.[4] The superintendent has discretion to "refer the incident report to the Disciplinary Committee/Hearing Officer for formal action, refer it for informal resolution, or file it in the prisoner's case record as an informational report."[5] An informational report must include, among other things, "a description of the alleged infraction" and "details of the incident."[6] Although "[t]he Department may not take any punitive action against a prisoner ... because of an Information Report in the prisoner's case record,"[7] the Department may "consider veri-

2. From Bauer's perspective, he was: (1) wrongfully charged with misconduct; (2) wrongfully convicted through a constitutionally infirm disciplinary hearing; (3) wrongfully sentenced to—and actually served—fifteen days in segregated detention; and (4) facing future difficulties because of the wrongful disciplinary record in his prison file. As Bauer saw it, he was about to prevail on appeal, but after already physically punishing him, DOC was conceding in a way that would keep the same wrongful record in his prison file and would deny him all right of judicial review.

3. See *Clark v. State, Dep't of Corr.*, 156 P.3d 384, 387 (Alaska 2007) (quoting *Ulmer v. Alaska Rest. & Beverage Ass'n*, 33 P.3d 773, 776 (Alaska 2001)). Whether an issue is moot is a matter of law to which we apply our independent judgment. *Akpik v. State, Office of Mgmt. & Budget*, 115 P.3d 532, 534 (Alaska 2005) (citing *Ulmer*, 33 P.3d at 776).

4. *See* 22 Alaska Administrative Code (AAC) 05.410(a); State of Alaska Department of Corrections Policies and Procedures (P & P) Procedure 809.03(A) (1995).

5. P & P Procedure 809.03(B). *But see* 22 AAC 05.410(a) (stating that informal resolution and denomination of reports as informational are not separate courses of action, but sequential steps of same action).

6. P & P Procedure 809.03(A)(1)(a)-(b); 809.03(B)(3)(a); *see also* 22 AAC 05.410(e).

7. P & P Procedure 809.03(C)(4); 22 AAC 05.465(d); *see also* 22 AAC 05.455(a).

fied acts of misbehavior in the dispositive phase of a disciplinary action."[8] Whether an incident described in an "informational" report amounts to a "verified act" is not clear.

If a disciplinary hearing officer finds that a "prisoner did not commit an infraction or if a finding of guilt is reversed on appeal, the Superintendent must remove the disciplinary report and related documents from the prisoner's case record."[9] No statute, regulation, or provision in the DOC Policies & Procedures specifically allows for a "reduction" or re-classification of a disciplinary report to an informational report. But there is some ambiguity on this point: DOC policies state that the superintendent "shall file information reports in the prisoner's case record for purposes of program assessment."[10] It is not clear whether informational reports are filed and maintained in the record regardless of a not-guilty finding, or whether an informational report is removed under the same circumstances as a disciplinary report.

DOC portrays reduction of Bauer's original disciplinary report to an "informational" item as complete relief. Bauer argues that an informational report has both direct and collateral consequences. He describes the report as being "used during annual classifications to determine the security and custody levels of the prisoner ... [and] during a parole hearing or any other hearings in the

prisoner's future." Bauer claims that DOC "reduced" the disciplinary report by simply marking the original disciplinary report as "informational."[11] Bauer contends that when this report is considered at future proceedings, any effort he makes to explain the circumstances of the report could be negatively "construed as not accepting responsibility for [his] actions." Bauer fears that this will impact his ability to progress to a "medium or minimum [security] institution where he can receive more reformation."

▮ Had Bauer been found not guilty at his initial hearing, or at a new hearing ordered by the superior court, prison policy seems to require removal of all record of the incident from his file.[12] If this is correct, merely re-characterizing the original disciplinary report or reducing it to "informational" is not the most favorable relief available to Bauer in these proceedings. We remand to the superior court to determine if DOC's actions afforded Bauer full and complete relief,[13] or if Bauer may obtain greater relief through full consideration of his appeal or a new administrative hearing on the original disciplinary charges.[14] If a new administrative hearing is ordered, the superior court should determine what procedural infirmities DOC admits occurred during the first hearing and how those infirmities will be remedied during a second hearing.[15] Alternatively, the court may determine that a decision on

---

**8.** P & P Procedure 809.03(C)(4); 22 AAC 05.465(d); *see also* 22 AAC 05.455(a).

**9.** P & P Procedure 809.03(C)(2); *see also* 22 AAC 05.465(a).

**10.** P & P Procedure 809.03(C)(3); *see also* 22 AAC 05.465(c).

**11.** The report itself was not included in the record before us.

**12.** P & P Procedure 809.03(C)(2); 22 AAC 05.465(a).

**13.** Courts may consider the merits of moot claims either because it is in the public interest to resolve the issue, see *Peter A. v. State, Department of Health & Social Services, Office of Children's Services*, 146 P.3d 991, 996–97 (Alaska 2006), or because collateral consequences exist for the litigant bringing the claim. *Id.* at 994–95. Because we remand for consideration of whether the appeal actually is moot, we need not consider whether either of these exceptions to the moot-

ness doctrine applies here. If on remand the superior court again concludes that Bauer's appeal is moot, the court should then consider whether Bauer's claims should be considered under either exception.

**14.** Bauer emphasizes that he never requested a new hearing and does not want a new hearing, arguing that a new hearing would be prohibited by law. He requests instead that we expunge his record. But that remedy would be inappropriate here. Bauer's appeal focuses on procedural error. If he prevails, the proper remedy would be remand to the administrative agency for a due-process-compliant hearing, not dismissal and expungement.

**15.** DOC appears to concede that an error occurred in the course of Bauer's disciplinary hearing, stating to the superior court that "at least one of the appeal issues likely [has] merit." But DOC did not specify what error it acknowledges, nor does it clarify its statement on appeal. Instead, DOC states only that a hearing officer

the merits of Bauer's constitutional claims is warranted to provide guidance for the second hearing.

### B. Bauer Was Not Entitled to a Default Judgment.

██ Bauer asserts that the superior court erred in not ruling on his "application" for a default judgment, which he believed was properly brought under Alaska Civil Rule 55.[16] Bauer correctly notes that "pro se litigants should be held to less stringent standards than those of lawyers," [17] but even liberally construed, Bauer's request for a default judgment cannot be granted.

██ Appeals of administrative actions are governed not by the Civil Rules, but by Part Six of the Rules of Appellate Procedure. Where, as here, Part Six does not address a particular issue, the general Rules of Appellate Procedure apply.[18] Appellate Rule 212(c)(10) states that when an appellee fails to file a brief as required, the appellee shall not be heard at oral argument except by appellant consent or court request. This would have been an appropriate sanction for DOC's failure to file a brief, not a default judgment granting all of the relief Bauer sought. The superior court did not err by ignoring Bauer's request for a default judgment when it dismissed the appeal as moot.

## IV. CONCLUSION

We VACATE the superior court's order dismissing Bauer's appeal and REMAND for further consideration of whether it is moot and for further proceedings as appropriate. We AFFIRM the superior court's implicit denial of Bauer's request for a default judgment.

CARPENETI, Justice, not participating.

---

would "know that error(s) had been made at the initial hearing and would presumably try to correct them."

**16.** Alaska R. Civ. P. 55 (when party against whom judgment for affirmative relief is sought has failed to appear and answer or otherwise

defend as shown by affidavit or otherwise, clerk shall enter default).

**17.** *Breck v. Ulmer,* 745 P.2d 66, 75 (Alaska 1987) (emphasis omitted).

**18.** *See* Alaska R.App. P. 601(c).