*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| STATE OF ALASKA, OFFICE OF LIEUTENANT GOVERNOR, DIVISION OF ELECTIONS, and KEVIN MEYER, in an official capacity. | ) ) ) ) ) | Supreme Court No. S-17818 Superior Court No. 3AN-19-11106 CI |
| Appellants, | ) ) ) | O P I N I O N |
| v. | ) ) | No. 7499 – January 8, 2021 |
| VOTE YES FOR ALASKA'S FAIR SHARE, | ) ) ) ) ) | |
| Appellee. | ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, William F. Morse, Judge.

Appearances: Jessica M. Alloway, Assistant Attorney General, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for Appellants. Robin O. Brena and Jack S. Wakeland, Brena, Bell & Walker, P.C., Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices, and Eastaugh, Senior Justice.[*] [Borghesan, Justice, not participating.]

WINFREE, Justice.

---

[*]     Sitting by assignment made under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

# I.    INTRODUCTION

When a law is proposed by initiative the lieutenant governor has a duty to prepare a true and impartial ballot summary to assist voters in making informed and intelligent decisions whether to approve the initiative.  Sponsors of an initiative that would revise taxation for a defined set of oil producers filed a superior court complaint seeking declaratory judgment that the lieutenant governor's initiative ballot summary was not true and impartial.  The superior court held that one ballot summary sentence included "partisan suasion" by weighing in on a disputed initiative provision's meaning, and the court ordered that sentence deleted.  The lieutenant governor appealed, arguing that the disputed sentence was fair and impartial, but requesting that, if we affirmed the court's decision, we allow the lieutenant governor to insert a proposed replacement sentence.  After expedited briefing and oral arguments, we issued a brief order affirming the court's ruling and judgment but allowing, at the lieutenant governor's discretion, the portion of the proposed replacement sentence to which the sponsors had no objection.  We stated that "[a]n opinion explaining the reasoning for this order will follow at a later date."  This opinion sets forth the reasons for our earlier order.

# II.   FACTS AND PROCEEDINGS

## A.    Initiative

In August 2019 an initiative sponsor group, Vote Yes For Alaska's Fair Share, submitted to Lieutenant Governor Kevin Meyer a proposed initiative entitled "An Act relating to the oil and gas production tax, tax payments, and tax credits."[1]  Section

---

[1]    Alaska's initiative process involves several steps.  Initiative sponsors first must file an application with the lieutenant governor.  Alaska Const. art. XI, § 2; AS 15.45.020; *see also* AS 15.45.030 (listing initiative application requirements, including that application contain proposed bill and designate three-sponsor committee); AS 15.45.040 (listing proposed bill form requirements).  If the lieutenant governor
(continued...)

states: "Notwithstanding Any Other Statutory Provisions to the Contrary, the Oil and Gas Production Tax in AS 43.55 Shall be Amended as Follows." The initiative would revise Alaska's taxation scheme for a defined set of oil producers. Three of the initiative's nine sections have been central to this dispute, although this appeal's focus is on only the seventh section.

Section 2 institutes a new oil production tax, described in Sections 3 and 4, that will:

> only apply to oil produced from fields, units, and nonunitized reservoirs north of 68 degrees north latitude that have produced in excess of 40,000 barrels of oil per day in the previous calendar year and in excess of 400,000,000 barrels of total cumulative oil production. For other oil production, the tax shall be unchanged by this Act.

Section 4(b) provides that for Section 2's defined oil production:

> An additional production tax shall be paid for each month for which the producer's average monthly Production Tax Value of taxable oil is equal to or more than $50. The additional tax

---

[1] (...continued)
certifies the application's sufficiency, initiative petitions are prepared for the sponsors; the petitions contain, among other things, an impartial summary of the proposed bill's subject matter. Alaska Const. art. XI, § 3; AS 15.45.070 (regarding application review for certification); AS 15.45.090 (regarding petition preparation). The sponsors then circulate petitions throughout the state for voter signatures, subject to statutory requirements. Alaska Const. art. XI, § 3; AS 15.45.090-.140. The necessary number of qualified voters must sign initiative petitions for filing with the lieutenant governor "within one year from the time the sponsors received notice from the lieutenant governor that the petitions were ready for delivery to them." AS 15.45.140. The lieutenant governor reviews the petitions and, if properly filed, prepares a title and proposition summarizing the proposed law for placement on the ballot in the first statewide election held more than 120 days after adjournment of the legislative session following the filing. Alaska Const. art. XI, § 4; AS 15.45.150-.190. Any person aggrieved by the lieutenant governor's determination may file a superior court action within 30 days. AS 15.45.240.

shall be the difference between the average monthly Production Tax Value of a barrel of oil and $50, multiplied by the volume of taxable oil produced by the producer for the month, multiplied by 15 percent.

Lastly, Section 7, entitled "Public Records," provides:

All filings and supporting information provided by each producer to the Department[2] relating to the calculation and payment of the taxes set forth in Sections 3 and 4 shall be a matter of public record.

### B.    Attorney General Opinion

Lieutenant Governor Kevin Meyer referred the initiative application to Attorney General Kevin Clarkson for legal review.[3]  In October 2019 an Attorney General Opinion was issued regarding the proposed initiative bill.[4]  The Opinion asserted that "the language of the bill is difficult to interpret and raises a number of implementation and constitutional questions."[5]  The Opinion questioned several provisions, in particular noting that Section 7 "would establish that all filings and supporting information provided to the Department of Revenue relating to the tax

---

[2]    *See* AS 43.99.950(2) (referring to "department" in AS 43.55 as Department of Revenue).

[3]    *See* Alaska Const. art XI, § 2 (providing for lieutenant governor's review of initiative for proper form); AS 15.45.070 (requiring lieutenant governor to review initiative application within 60 days and either certify or state reasons for denial).

[4]    STATE OF ALASKA, DEP'T OF LAW, OP. ATT'Y GEN., 2019200671 (Oct. 14, 2019), http://www.law.state.ak.us/pdf/opinions/opinions_2019/19-006_190GTXReview. pdf.

[5]    *Id.* at 1.

calculations of sections 3 and 4 shall be a matter of public record."[6] The Opinion explained that Section 7 "raise[s] concerns over the constitutional right to privacy" and that most relevant documents would "likely be protected from disclosure."[7] The Opinion observed that "making the tax documents 'a matter of public record' simply means the Public Records Act applies" and that the "Department of Revenue would have to review all the requested records" for appropriate redactions.[8] The Opinion further noted a "conflict with current law that actually makes it a crime to disclose confidential tax documents" and implementation difficulties for the Department of Revenue.[9]

The Opinion nonetheless concluded that "the proposed bill and application are in the proper form for an initiative and the application complies with the constitutional and statutory provisions governing the use of the initiative" and recommended that the lieutenant governor certify the initiative application.[10] The Attorney General Opinion included a "ballot-ready petition title and summary."[11]

---

[6] *Id.* at 6.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.* at 13; *cf.* AS 15.45.080 (specifying bases for denying certification, including initiative bill "not confined to one subject," "application is not substantially in the required form," or "an insufficient number of qualified sponsors").

[11] "[I]n practice the lieutenant governor employs the same summary for both the petition and ballot and . . . the standards for the adequacy of a summary are the same regardless of whether it is a petition or ballot summary." *Planned Parenthood of Alaska v. Campbell*, 232 P.3d 725, 729 n.10 (Alaska 2010) (citing *Pebble Ltd. P'ship ex rel. Pebble Mines Corp. v. Parnell*, 215 P.3d 1064, 1082 n.80 (Alaska 2009)). The summaries nonetheless are subject to different constitutional and statutory provisions.

(continued...)

## C.     Initiative Sponsors' Complaint

A few days after the Attorney General Opinion issued, an initiative sponsor corresponded with the Department of Law about revising the proposed initiative summary.  The Department of Law declined to consult with the sponsors, explaining that the Division of Elections "believe[d] the summary [met] the statutory requirements of neutrality and readability" and that "feedback on a summary before finalizing is in the context of ongoing litigation over certification."[12]

In November 2019 the sponsors filed a superior court complaint against the State of Alaska, the Office of the Lieutenant Governor, the Division of Elections, and

_____

[11]     (...continued)
*Compare* Alaska Const. art. XI, § 3 (requiring lieutenant governor, after certifying initiative application, to prepare petition containing summary of initiative's subject matter for sponsors to circulate), *and* AS 15.45.090 (regarding petition preparation and requirement that each petition contain "an impartial summary of the subject matter of the bill"), *with* Alaska Const. art. XI, § 4 (stating procedures for initiative election and requiring lieutenant governor to prepare ballot title and proposition "summarizing the proposed law"), *and* AS 15.45.180 (requiring lieutenant governor to prepare ballot title and proposition, giving "a true and impartial summary of the proposed law," if initiative petition is properly filed).

"[T]here are important differences between the functions served by initiative petition summaries and ballot summaries." *Planned Parenthood*, 232 P.3d at 729.  The petition summary serves the signature-gathering requirement to get an initiative on the ballot, ensuring that "only propositions with significant public support are included on the ballot." *Id.* at 729 (quoting *Citizens for Implementing Med. Marijuana v. Municipality of Anchorage*, 129 P.3d 898, 901 (Alaska 2006)).  The ballot summary enables voters to "reach informed and intelligent decisions on how to cast their ballots — decisions free from any partisan suasion." *Id.* at 730 (quoting *Alaskans for Efficient Gov't, Inc. v. State*, 52 P.3d 732, 735 (Alaska 2002)).

[12]     *See* AS 15.45.240 (providing aggrieved person may bring superior court action to review lieutenant governor's determination regarding statutory initiative provisions).

Lieutenant Governor Kevin Meyer in an official capacity.[13] The sponsors alleged that the initiative summary misrepresented: (1) Section 2 concerning the initiative's applicability; (2) Section 4(b) concerning an additional 15% tax on net production value at $50 per barrel or more; and (3) Section 7's tax information disclosure requirements.

The sponsors asserted in relevant part that Section 2 states that the initiative's provisions "apply to oil produced from fields, units, and nonunitized reservoirs north of 68 degrees north latitude that have produced in excess of 40,000 barrels of oil per day in the previous calendar year *and* in excess of 400,000,000 barrels of total cumulative oil production" (sponsors' emphasis). But the lieutenant governor's summary included the following language:

> This act would change the oil and gas production tax for areas of the North Slope where the company produced more than 40,000 barrels of oil per day in the prior year *and/or* more than 400 million barrels total. *It is unclear whether the area has to meet both the 40,000 and 400,000 million thresholds or just one of them.*[14] (Sponsors' emphasis.)

The sponsors also asserted that Section 1 of the initiative indicated "the Oil and Gas Production Tax in AS 43.55 shall be amended as follows" and that Section 4(b) described the initiative's tax on production tax value as an "*additional* production tax"

---

[13] The lieutenant governor controls and supervises the Division of Elections. AS 15.10.105(a). The Division of Elections director "act[s] for the lieutenant governor in the supervision of central and regional election offices" and in "the administration of all state elections," including in preparing all official ballots. *Id.*; *see also* AS 15.15.010 (regarding general administrative supervision by director); AS 15.15.030 (regarding official ballot preparation). We refer to the lieutenant governor and Division of Elections collectively as "the State" unless individual references are necessary.

[14] The State later conceded that the summary included a typographical error; it was supposed to read "400 million" instead of "400,000 million."

to the existing 35% tax on production tax value.[15]  (Emphasis in original.)  But the lieutenant governor's summary stated:  "[Section 4] does not designate what tax [it] is in addition to.  The result is that this tax would likely always be less than" the existing 35% tax on production tax value.  The sponsors alleged that the Section 4(b) summary suggests the initiative would impose only a single tax on production tax value, contrary to the initiative's actual terms imposing a tax in addition to the existing tax.

The sponsors further asserted that the summary misrepresented Section 7.  They asserted that the Opinion correctly observed the initiative would supersede existing law by making certain defined producers' tax information "a matter of public record."  Despite this observation, the summary stated:

> The Act would also make all tax documents relating to the calculation and payment of the new taxes a matter of public record.  *This would mean the documents would be reviewed under the normal Public Records Act process, and any information that needed to be withheld, for example for privacy or balance-of-interests reasons, would be withheld.*  (Sponsors' emphasis.)

The sponsors alleged that "the Attorney General has interpreted this phrase to mean there would be no change to the status quo and the tax documents would continue to be confidential."

The sponsors began circulating the initiative petition for voter signatures with the disputed petition summary in place while seeking to correct the summary for use on a future general election ballot.[16]  They requested a declaratory judgment and an injunction requiring the State "to correct the prepared summary for the ballot with regard

---

[15]    *See* AS  43.55.011(e)  (providing  for  oil  and  gas  production  tax); AS 43.55.160 (determining "production tax value of oil and gas").

[16]    *See* AS 15.45.090-.130 (regarding initiative petition circulation).

to the inaccuracies" detailed in the complaint without requiring recirculating the initiative petition.[17]

In March 2020 the lieutenant governor notified the sponsors that they had gathered sufficient petition signatures and that the initiative petition was properly filed.[18] The lieutenant governor scheduled the initiative to appear on the November general election ballot.[19] The notice included a revised ballot summary, addressing the sponsors' complaints about Sections 2 and 4(b). Regarding Section 7, the new ballot summary provided: "The act would also make all filings and supporting information relating to the calculation and payment of the new taxes 'a matter of public record.' This would mean the normal Public Records Act process would apply." The sponsors continued their suit to challenge the Section 7 ballot summary, specifically the final sentence referencing the Public Records Act. They did not file a new complaint challenging the ballot summary.

---

[17] *See Planned Parenthood of Alaska v. Campbell*, 232 P.3d 725, 732-34 (Alaska 2010) (discussing severing impermissible portions of petition summary to correct summary for ballot without requiring recirculating initiative petition).

[18] *See* AS 15.45.150 (requiring lieutenant governor to review petition to determine if it was properly or improperly filed "[w]ithin not more than 60 days of the date the petition was filed"); *cf.* AS 15.45.160 (regarding bases for determining petition was improperly filed).

[19] *See* Alaska Const. art. XI, § 4 (requiring lieutenant governor to place initiative ballot title and proposition on ballot "for the first statewide election held more than [120] days after adjournment of the legislative session following the [petition] filing"); AS 15.45.190 (requiring initiative ballot title and proposition placed on "the election ballot of the first statewide general, special, special runoff, or primary election that is held after (1) the petition has been filed; (2) a legislative session has convened and adjourned; and (3) a period of 120 days has expired since the adjournment of the legislative session").

In May the parties filed cross-motions for summary judgment.[20] The State sought dismissal because the sponsors had not filed a new complaint after the lieutenant governor finalized the ballot summary. The State further argued that the ballot summary "impartially and accurately" summarized the initiative and that the challenged sentence pointed out "certain areas of ambiguity in the initiative." The sponsors acknowledged the lieutenant governor's correction of two of the three ballot summary problems their complaint described, but they asserted the ballot summary continued "to misconstrue Section 7." The sponsors also argued that the lieutenant governor had personal bias against the initiative because of his previous work in the oil industry.

The superior court heard oral argument and ruled in the sponsors' favor. The court held that the State had "sufficient and timely notice of the continuing objections to section 7" and that "[t]here was insufficient (if any) substantive change between the two summaries to necessitate a new notice or any amendment to the complaint." After examining three statutes using the term "a matter of public record,"[21] the court noted that "the phrase 'a matter of public [record]' is often used as shorthand to mean information or documents are not [to] be kept confidential but will be available for public inspection." The court acknowledged that the parties' interpretations of "a matter of public record" appeared to conflict; under the State's interpretation "the [oil] producers could still assert statutory exceptions to public access and thus records would

---

[20]     *See* Alaska R. Civ. P. 56(c) (providing court may grant summary judgment to moving party when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law").

[21]     AS 27.21.100 (regarding public access to information involving surface coal mining and reclamation permit applications); AS 44.88.215 (regarding Alaska Industrial Development and Export Authority records and information confidentiality); AS 39.90.010 (protecting from adverse employer action public employee who communicates "matters of public record or information" under Public Records Act).

remain confidential." But the court explained that its analysis was restricted to determining whether the ballot summary was true and impartial. The court noted that including the State's interpretation would improperly "weigh[] in on the dispute over the meaning of section 7." The court concluded that "the voters should be permitted to voice their opinions of the sponsors' intentions without [the lieutenant governor] opining that the initiative does not achieve [] the level of transparency that the sponsors seek through section 7." The court ordered deletion of the Section 7 ballot summary's final sentence: "This would mean the normal Public Records Act process would apply."

A few days after the superior court's summary judgment order, the State asked the court to make additional findings and amend the judgment[22] or, alternatively, to reconsider its decision.[23] The State argued that the court's order "did not foreclose the [l]ieutenant [g]overnor from making further changes to better conform to the [c]ourt's order while also ensuring that voters have a full, accurate, and impartial summary that does not weigh in on the dispute over the meaning of section 7." The State argued that without an additional sentence there would be an "information void that, if left uncorrected, is misleading to voters." The State requested that the court amend its order to include in the Section 7 ballot summary a new final sentence: "The act does not specify the process for disclosure of the public records and whether any exceptions may apply."

---

[22] *See* Alaska R. Civ. P. 52(b) ("Upon motion of a party made not later than 10 days after the date shown in the clerk's certificate of distribution on the judgment the court may amend its findings or make additional findings and may amend the judgment accordingly.").

[23] *See* Alaska R. Civ. P. 77(k) (providing that "[a] motion to reconsider the ruling" must be filed "within ten days after the date of notice of the ruling" unless good cause is shown for later filing).

The superior court denied the State's motion and entered final judgment requiring that the State "delete from the ballot summary the sentence 'This would mean the normal Public Records Act process would apply.' " This appeal followed.

After expedited briefing the parties argued the case to us on August 20. On August 26 we issued an order, with an opinion to follow, affirming the superior court's ruling and final judgment and granting in part the request to, at the lieutenant governor's discretion, include in the Section 7 ballot summary only the first phrase of the proposed sentence: "The act does not specify the process for disclosure of the public records."[24]

## III. STANDARD OF REVIEW

We review de novo a superior court's summary judgment decision, including its determination of a ballot summary's legal sufficiency.[25] Whether a petition summary or ballot summary is biased or misleading is a question of law to which we

---

[24] *Meyer v. Vote Yes for Alaska's Fair Share*, No. S-17818 (Alaska Supreme Court Order, Aug. 26, 2020).

[25] *Citizens for Implementing Med. Marijuana v. Municipality of Anchorage*, 129 P.3d 898, 901 (Alaska 2006); *Sonneman v. State*, 969 P.2d 632, 635 (Alaska 1998); *see also Planned Parenthood of Alaska v. Campbell*, 232 P.3d 725, 729 (Alaska 2010).

apply our independent judgment.[26] We will adopt the rule of law that is most persuasive in light of precedent, reason, and policy.[27]

## IV. DISCUSSION

### A. A True And Impartial Ballot Summary Protects The People's Lawmaking Right.

Alaskans exercise their constitutional lawmaking right when they cast their ballots for or against a proposed initiative.[28] When an initiative petition gathers sufficient support and the lieutenant governor certifies the initiative for placement on the ballot, the lieutenant governor must prepare a ballot title and summary giving "a true and impartial

---

[26] *Planned Parenthood*, 232 P.3d at 729. In deference to the lieutenant governor's statutory duty to prepare a ballot summary, *see* AS 15.45.180(a), we will not invalidate a summary simply because a better one could be written. *Planned Parenthood*, 232 P.3d at 729; *Pebble Ltd. P'ship ex rel. Pebble Mines Corp. v. Parnell*, 215 P.3d 1064, 1073 (Alaska 2009); *Alaskans for Efficient Gov't, Inc. v. State*, 52 P.3d 732, 735 (Alaska 2002); *Burgess v. Alaska Lieutenant Governor Terry Miller*, 654 P.2d 273, 276 & n.7 (Alaska 1982). When a party argues that a ballot summary is biased or misleading, despite our deference we look beyond the lieutenant governor's own assessment of legal adequacy and focus on whether the ballot summary is objectively true and impartial. We apply our independent judgment in this examination, *see Planned Parenthood*, 232 P.3d at 729, although we have noted that the burden of demonstrating whether a ballot summary is biased or misleading lies with the challenger. *Id.*; *Burgess*, 654 P.2d at 276 ("The burden is upon those attacking the summary to demonstrate that it is biased or misleading."). We sometimes have referred to the legal question as whether we cannot reasonably conclude that the lieutenant governor's initiative summary is impartial and accurate. *See, e.g.*, *Planned Parenthood*, 232 P.3d at 729; *Alaskans for Efficient Gov't, Inc.*, 52 P.3d at 735.

[27] *Faipeas v. Municipality of Anchorage*, 860 P.2d 1214, 1217 (Alaska 1993) (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n.6 (Alaska 1979)).

[28] *Meyer v. Alaskans for Better Elections*, 465 P.3d 477, 478-79 (Alaska 2020).

summary of the proposed law."[29]  "[T]he basic purpose of the ballot summary is to enable voters to reach informed and intelligent decisions on how to cast their ballots — decisions free from any partisan suasion."[30]  An initiative "should be presented *clearly* and honestly to the people of Alaska"[31] and the summary "must be 'a fair, concise, true and impartial statement of the intent of the proposed measure,' 'free from any misleading tendency, whether of amplification, of omission, or of fallacy, and . . . must contain no partisan coloring.' "[32]  Because a ballot is the paper upon which voters give expression to their choices and exercise their lawmaking right, "[a] biased, misleading, or inaccurate ballot undermines the voting process."[33]  In short, the lieutenant governor may not improperly interfere in the people's ability to cast informed ballots.[34]

The people's lawmaking right is undermined by a biased, inaccurate, or misleading ballot summary not only when voters cast their ballots, but also when, post-

---

[29]  AS 15.45.180(a)-(b) (providing standards for ballot title and summary and requiring lieutenant governor to abide by requirements in AS 15.80.005).

[30]  *Alaskans for Efficient Gov't, Inc.*, 52 P.3d at 735.

[31]  *Faipeas*, 860 P.2d at 1221 (emphasis in original) (quoting *Yute Air Alaska, Inc. v. McAlpine*, 698 P.2d 1173, 1188 (Alaska 1985) (Moore, J., dissenting)).

[32]  *Planned Parenthood of Alaska v. Campbell*, 232 P.3d 725, 731 (Alaska 2010) (quoting *Burgess v. Alaska Lieutenant Governor Terry Miller*, 654 P.2d 273, 275 (Alaska 1982)).

[33]  *Faipeas*, 860 P.2d at 1222 (Moore, J., dissenting).

[34]  *See* AS 15.10.105(b) (listing personnel rules and stating "[i]t is essential that the nonpartisan nature, integrity, credibility, and impartiality of the administration of elections be maintained"); *see also Meyer v. Alaskans for Better Elections*, 465 P.3d 477, 479 (Alaska 2020) (discussing constitutional protections for people's exercise of political power, including to "express[] their will on the multitudinous issues which confront them" and legislate directly by initiative to serve "as a check on legislative action or inaction." (quoting *Boucher v. Bomhoff*, 495 P.2d 77, 78 (Alaska 1972))).

enactment, a legal challenge requires judicial interpretation of an initiative. We more often are called upon to interpret a statute than an initiative, and in those cases we focus on what the legislature intended. Statutory interpretation's goal is to "give effect" to the lawmakers' intent, "with due regard for the meaning the statutory language conveys to others."[35] We take a slightly different approach for determining the "legislative intent" of an enacted initiative, examining "any published arguments made in support or opposition to determine what meaning voters may have attached to the initiative."[36] And we generally consider the election pamphlet containing the lieutenant governor's ballot summary "an authoritative source of the voters' common understanding" of an initiative's provisions.[37] A biased, misleading, or inaccurate ballot summary frustrates

---

[35] *Muller v. BP Exploration (Alaska) Inc.*, 923 P.2d 783, 787 (Alaska 1996) (quoting *Tesoro Alaska Petroleum Co. v. State*, 746 P.2d 896, 905 (Alaska 1987)).

We take a "sliding scale approach" when interpreting a statute: The plainer the statutory language, the more convincing evidence of contrary legislative intent must be. *State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins. v. Alyeska Pipeline Serv. Co.*, 262 P.3d 593, 597 (Alaska 2011).

[36] *Alaskans for a Common Language, Inc. v. Kritz*, 170 P.3d 183, 192-93 (Alaska 2007); *see also Wielechowski v. State*, 403 P.3d 1141, 1150 (Alaska 2017) (examining voter intent of constitutional amendment by looking to published arguments); *Falcon v. Alaska Pub. Offices Comm'n*, 570 P.2d 469, 472 n.6 (Alaska 1977) (noting courts look to published arguments to determine meaning of voter initiative).

[37] *Hickel v. Halford*, 872 P.2d 171, 178 n.12 (Alaska 1994); *see also Kritz*, 170 P.3d at 193 ("To the extent possible, we attempt to place ourselves in the position of the voters at the time the initiative was placed on the ballot, and we try to interpret the initiative using the tools available to the citizens of this state at that time."); *State v. Lewis*, 559 P.2d 630, 637-38 (Alaska 1977) (explaining constitutional provisions are ratified by voters, requiring we look to "the meaning that the voters would have placed on . . . provisions" and relying on widely distributed report explaining constitutional provisions to Alaska voters as most "cogent expression of the intent . . . of those voting
(continued...)

-15-                                                                          **7499**

voters' ability to express their will and could distort any post-enactment statutory analysis of the citizen-lawmakers' intent.[38]

## B. The Ballot Summary's Statement, "This Would Mean The Normal Public Records Act Process Would Apply," Is An Inaccurate And Misleading Statement.

The State argues that the original Section 7 ballot summary was "true and impartial because it accurately educates voters on the scope and import of the proposed law by informing them that certain taxpayer records, previously defined as confidential and exempted from the scope of the Public Records Act, would now be available under that Act." The State contends that it must mention the Public Records Act in the ballot summary to provide "important legal context" so voters are not "misled in [their] understanding of what a 'public record' is, i.e., a record that is available to the public pursuant to the Public Records Act."

The sponsors contend that the State improperly conflates the terms "a matter of public record" with "public record," despite having distinct definitions, and they argue that Public Records Act exemptions may apply. The sponsors assert: "The common meaning of 'a matter of public record' in statute and case law is that 'a matter of public record' is 'not confidential.' " The sponsors further argue that the ballot

---

[37]    (...continued)
for ratification of the Constitution").

[38]    *See, e.g.*, *Citizens for Implementing Med. Marijuana v. Municipality of Anchorage*, 129 P.3d 898, 902 (Alaska 2006) (noting "confusing or misleading petitions frustrate the ability of voters to express their will"); *State v. Alex*, 646 P.2d 203, 207-08 (Alaska 1982) (explaining, in context of court's practice of narrowly construing statutes to avoid constitutional infirmity, that court is mindful it should only narrowly construe statutes if it "can be done without doing violence to the legislature's intent" and that "giving the statute an unintended meaning 'would be stepping over the line of interpretation and engaging in legislation' " (quoting *Gottschalk v. State*, 575 P.2d 289, 296 (Alaska 1978))).

summary's "extraneous interpretive sentence could only mean the tax filings would remain confidential — the exact opposite of the plain meaning, the obvious intent of the language, the publicly stated intentions of the sponsors, and the [Attorney General Opinion]'s own acknowledgment of the sponsors' intention."

The parties' dispute focuses primarily on the ballot summary's impartiality. We reject as irrelevant to our disposition of this appeal the sponsors' suggestion that we should infer the lieutenant governor was personally biased. We instead review only whether the lieutenant governor's ballot summary is objectively true and impartial. But examining the ballot summary's accuracy by looking at how Section 7 changes current law also is important. Section 7 of the initiative provides: "All filings and supporting information provided by each producer to the Department [of Revenue] relating to the calculation and payment of the taxes set forth in Sections 3 and 4 shall be a matter of public record." By contrast, in relevant part the lieutenant governor's ballot summary provides: "The act would also make all filings and supporting information relating to the calculation and payment of the new taxes 'a matter of public record.' This would mean the normal Public Records Act process would apply."

The Public Records Act[39] covers "all public records in the state"[40] and provides for public inspection of agencies' public records unless an exception applies.[41] "[T]he legislature has expressed a bias in favor of public disclosure"[42] and has broadly

---

[39]     AS 40.25.100-.295.

[40]     *Griswold v. Homer City Council*, 428 P.3d 180, 186 (Alaska 2018).

[41]     AS 40.25.110(a); AS 40.25.120 (listing exceptions).

[42]     *City of Kenai v. Kenai Peninsula Newspapers, Inc.*, 642 P.2d 1316, 1323 (Alaska 1982).

defined a "public record."[43]  Although the sponsors expend considerable effort arguing that the terms "a matter of public record" and "public record" are not the same, the parties do not dispute that the initiative would be integrated into the Public Records Act. Yet nothing in the initiative's text provides how this could be done.  The initiative therefore requires further interpretation.  But the Department of Administration "supervise[s] and adopt[s] regulations for the operation and implementation" of the Public Records Act by executive branch public agencies,[44] not the lieutenant governor and the Division of Elections.[45]  How the Public Records Act applies and whether this involves "the *normal* Public Records Act process" (emphasis added) presently is unclear and is not within the authority of the lieutenant governor or Division of Elections to determine.

---

[43]     AS 40.25.220(3) provides:

> "[P]ublic records" means books, papers, files, accounts, writings, including drafts and memorializations of conversations, and other items, regardless of format or physical characteristics, that are developed or received by a public agency, or by a private contractor for a public agency, and that are preserved for their informational value or as evidence of the organization or operation of the public agency; "public records" does not include proprietary software programs.

[44]     AS 40.25.123(a).

[45]     *See* AS 44.19.020 (listing lieutenant governor's duties to:  "(1) administer state election laws; (2) appoint notaries public; (3) adopt regulations under AS 44.62 (Administrative Procedure Act) that establish for the broadcasting of notices under AS 44.62.190 and 44.62.310(e), the frequency of the broadcasts, appropriate broadcast times, and the locations for the broadcasts"); AS 15.10.105(a) (creating Division of Elections and listing director's duties); AS 15.15.010 (setting out Division of Elections director's general administrative supervision over conducting state elections).

The initiative also is clear that its provisions relate to the oil and gas production tax in AS 43.55. Section 1 of the initiative states: "Notwithstanding Any Other Statutory Provisions to the Contrary, the Oil and Gas Production Tax in AS 43.55 Shall Be Amended as Follows." The initiative therefore also impacts the authority and responsibilities of the Department of Revenue, which receives tax information from oil and gas producers.[46] The parties agree that Section 7 of the initiative directly conflicts with AS 40.25.100, making tax information in the Department of Revenue's possession confidential.[47] The initiative further conflicts with AS 43.05.230, making it "unlawful for a current or former officer, employee, or agent of the state to divulge the amount of income or the particulars set out or disclosed in a report or [tax] return,"[48] except in limited circumstances, and subjecting an intentional violator to imprisonment.[49] The initiative's text does not explain how it would interact with these existing statutes. The Department of Revenue,[50] not the lieutenant governor or the Division of Elections, would interpret Section 7, determine how to implement it, and decide the disclosure process.

---

[46] *See* AS 43.55.030 (filing of oil and gas producer statements); AS 43.55.040 (listing Department of Revenue's powers).

[47] AS 40.25.100(a) ("Information in the possession of the Department of Revenue that discloses the particulars of the business or affairs of a taxpayer or other person . . . is not a matter of public record.").

[48] AS 43.05.230(a).

[49] AS 43.05.230(f) ("A wilful violation of the provisions of this section or of a condition imposed under AS 43.55.040(1)(B) is punishable by a fine of not more than $5,000, or by imprisonment for not more than two years, or by both.").

[50] *See* AS 43.55.110(a) (providing Department of Revenue "may adopt regulations for the purpose of making and filing reports required by this chapter and otherwise necessary to the enforcement of this chapter"); *see also* AS 44.25.020 (listing Department of Revenue's duty to "enforce the tax laws of the state").

Section 7 thus leaves potential implementation issues for resolution by state agencies other than the Division of Elections. Rather than simply acknowledging these remaining implementation questions, the lieutenant governor's ballot summary provides that under Section 7 "the normal Public Records Act process would apply" without defining what that means. The lieutenant governor is not necessarily excluded from stating an initiative's legal import in a ballot summary,[51] but a ballot summary must "be free from any misleading tendency, whether of amplification, of omission, or of fallacy, and [] it must contain no partisan coloring."[52] The ballot summary misleads voters about Section 7's effect because the summary does not disclose disputed and unripe implementation questions that other agencies would resolve.[53] Until the proper agencies review Section 7, the lieutenant governor's assessment is speculative and improperly weighs in on its interpretation.[54]

---

[51] *See Planned Parenthood of Alaska v. Campbell*, 232 P.3d 725, 730 (Alaska 2010) (explaining when omission may render ballot summary legally deficient); *Burgess v. Alaska Lieutenant Governor Terry Miller*, 654 P.2d 273, 276 (Alaska 1982) ("[T]he Alaska Constitution and the state electoral laws do not require the lieutenant governor to give 'special' reminders to the voters regarding the scope of a state initiative.").

[52] *Alaskans for Efficient Gov't, Inc. v. State*, 52 P.3d 732, 735 (Alaska 2002) (quoting *Burgess*, 654 P.2d at 275).

[53] *See, e.g.*, *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 843-44 (1984) ("The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." (quoting *Morton v. Ruiz*, 415 U.S. 199, 231 (1974))).

[54] *See Burgess*, 654 P.2d at 275 ("The summary may not be an argument for or against the measure, nor can it be likely to create prejudice for or against the measures." (quoting *In re Second Initiated Constitutional Amendment Respecting the Rights of the Pub. to Uninterrupted Serv. by Pub. Emps. of 1980*, 613 P.2d 867, 869

(continued...)

**C.    We Decline To Conduct Pre-Election Interpretation Of The Initiative.**

The State also argues that "the normal Public Records Act process would apply" to information identified in Section 7 is "the interpretation that is most likely to preserve the initiative's constitutionality." The State acknowledges that we ordinarily decline pre-election review of initiatives, but it cites *Pebble Ltd. Partnership ex rel. Pebble Mines Corp. v. Parnell*[55] to argue that, if we were to rule in the State's favor and were to adopt the lieutenant governor's interpretation, we could save the initiative from future constitutional challenge. We decline the invitation.

We long have recognized that when an initiative petition meets formal filing requirements, the initiative ordinarily is not subject to challenge unless and until it is enacted.[56] "The rule against pre-election review is a prudential one, steeped in traditional policies recognizing the need to avoid unnecessary litigation, to uphold the people's right to initiate laws directly, and to check the power of individual officials to keep the electorate's voice from being heard."[57] An exception is when the dispute is whether an initiative petition meets statutory or constitutional requirements on the initiative's use and an aggrieved party seeks judicial review of the lieutenant governor's decision.[58] But

---

[54]    (...continued)
(Colo. 1980))).

[55]    215 P.3d 1064, 1075-76 (Alaska 2009), *abrogated on other grounds by Mallot v. Stand for Salmon*, 431 P.3d 159, 167-70 (Alaska 2018).

[56]    *Alaskans for Efficient Gov't, Inc. v. State*, 153 P.3d 296, 298 (Alaska 2007).

[57]    *Id.*

[58]    There are two grounds for judicially reviewing a petition before circulation:

First, a petition may be rejected if it violates the subject matter restrictions that arise from the constitutional and

(continued...)

"general contentions about an initiative's constitutionality are justiciable only after the initiative has been passed by the electorate."[59]

In *Pebble Ltd. Partnership ex rel. Pebble Mines Corp. v. Parnell* opponents argued that a clean water initiative violated constitutional restrictions on the initiative's use by, among other arguments, making an appropriation.[60] The parties agreed that a challenged term could be construed in a manner preserving the initiative's constitutionality.[61] We agreed, noting that we construe an initiative "broadly so as to preserve it whenever possible."[62] But our interpretation of the *Pebble* initiative's language is inapposite in this case. The primary dispute in *Pebble* was whether the initiative application was in proper form or included "prohibited subjects" by making an

---

[58] (...continued)
statutory provisions governing initiatives, such as article XI, section 7's prohibition on appropriation through initiative. Second, a petition may be rejected if it "proposes a substantive ordinance where controlling authority establishes its unconstitutionality."

*Kohlhaas v. State, Office of Lieutenant Governor*, 147 P.3d 714, 717 (Alaska 2006) (quoting *Kodiak Island Borough v. Mahoney*, 71 P.3d 896, 900 (Alaska 2003)). *Cf.* AS 15.45.240 (providing that any person aggrieved by lieutenant governor's determination under AS 15.45.010-.220 may seek judicial review).

[59] *Kodiak Island Borough*, 71 P.3d at 901.

[60] 215 P.3d 1064, 1071 (Alaska 2009), *abrogated on other grounds by Mallot v. Stand for Salmon*, 431 P.3d 159, 167-70 (Alaska 2018).

[61] *Id.* at 1077.

[62] *Id.* at 1075-77 (quoting *Anchorage Citizens for Taxi Reform v. Municipality of Anchorage*, 151 P.3d 418, 422 (Alaska 2006)).

appropriation.[63]  There is no dispute that the initiative now before us is in proper form; the lieutenant governor certified the initiative petition,[64] and the attorney general's legal review concluded that the initiative "does not include any of the prohibited subjects and is not clearly unconstitutional under existing authority."[65]  We therefore decline the State's invitation to interpret the initiative's effect on the Public Records Act before voters have the opportunity to decide whether to adopt the initiative.

### D.    The Lieutenant Governor May Revise The Ballot Summary In Part.

The State argues alternatively that we should conclude the superior court abused its discretion by denying the lieutenant governor's motion to revise the ballot summary.[66]  The lieutenant governor proposed replacing the deficient sentence with the following sentence:  "The act does not specify the process for disclosure of the public records and whether any exceptions may apply."  The State contends that without this additional sentence, "the summary indicates only that filings and other information are

---

[63]    *Id.* at 1068-69, 1073, 1077; *see* AS 15.45.040 (specifying form of proposed initiative bill).

[64]    *See* Alaska Const. art. XI, § 2 (providing that lieutenant governor shall certify initiative application if it is in proper form); AS 15.45.080 (specifying bases for denying certification, including if initiative bill is "not confined to one subject" or if "application is not substantially in the required form").

[65]    STATE OF ALASKA, DEP'T OF LAW, OP. ATT'Y GEN., 2019200671 (Oct. 14, 2019), http://www.law.state.ak.us/pdf/opinions/opinions_2019/19-006_190GTXReview. pdf.

[66]    "We review the superior court's denial of a motion for reconsideration for abuse of discretion."  *Szabo v. Municipality of Anchorage*, 320 P.3d 809, 813 (Alaska 2014) (quoting *Alaskan Adventure Tours, Inc. v. City & Borough of Yakutat*, 307 P.3d 955, 959 (Alaska 2013)).  "A superior court abuses its discretion by making a decision that is arbitrary, capricious, manifestly unreasonable, or . . . stem[s] from an improper motive."  *Sharpe v. Sharpe*, 366 P.3d 66, 68 (Alaska 2016) (alterations in original) (quoting *Morris v. Horn*, 219 P.3d 198, 203-04 (Alaska 2009)).

'a matter of public record,' strongly implying to voters that the filings and other information are unconditionally public information." The State further explained in its reply brief that when we have held that a ballot summary violated statutory requirements, we have "either proposed revised language or ordered the lieutenant governor to change the summary to comply with [our] decision." The State contends the superior court should have allowed the lieutenant governor to revise the ballot summary to comply with the court's order.

The sponsors counter: "Procedurally, after the superior court ruled and resolved every issue in the case was not an appropriate time to permit [the lieutenant governor] to change his position and introduce new ballot language for the third time." They further characterize the revision as an "attempt at undermining the [initiative]'s plain terms" by suggesting that some exceptions to disclosure may apply despite Section 7 clearly requiring: "*All* filings and supporting information . . . *shall* be a *matter of public record*." (Emphasis in original.)

The State's motion for reconsideration was subject to Alaska Civil Rule 77(k).[67] Rule 77(k)(1) allows the superior court to reconsider a previous ruling if, among other reasons, the court "overlooked, misapplied, or failed to consider . . . a

---

[67] Although the State's motion was brought partially under Rule 52(b), the State sought reconsideration of the superior court's legal rulings under Rule 77(k). Rule 52(b) allows a party to request the court to amend its findings of fact or to make additional findings and amend the judgment accordingly. Rule 52(b) does not apply in this case because the court never held a trial or made findings of fact; the court's summary judgment ruling resolved only legal questions. *See* Alaska R. Civ. P. 52(a) ("In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon."); *Oberhansly v. Oberhansly*, 798 P.2d 883, 886 n.2 (Alaska 1990) (noting party's appeal of court's decision regarding tax consequences of particular property division was question of law not subject to Rule 52(b)).

decision or principle directly controlling" or the court "overlooked or misconceived a material question in the case." We already have discussed the court's correct conclusion that the ballot summary was not true and impartial. And although the State argues in its reply brief that case law allows the lieutenant governor to revise the ballot summary to conform with the court's order,[68] the State never raised this legal argument in its motion for reconsideration.[69] The State instead contended that it was "not asking the [c]ourt to reconsider the substance of its original order" and that the State's motion was meant "[t]o avoid a future dispute over this change [to the ballot summary] and to expedite resolution of the ballot summary issues." Neither reason warrants reconsidering the summary judgment order. Reconsideration under Rule 77(k) may not introduce new arguments

---

[68] *See Planned Parenthood of Alaska v. Campbell*, 232 P.3d 725, 734 (Alaska 2010) (affirming superior court's order); *Planned Parenthood of Alaska v. Campbell*, No. 3AN-09-09236 CI, at 23-24 (Alaska Super., Mar. 16, 2010) (concluding that parental notification initiative's ballot summary was not impartial and accurate and "remand[ing] this matter to the lieutenant governor to develop a fair and accurate summary that is consistent with the court's requirements"); *Alaskans for Efficient Gov't, Inc. v. State*, 52 P.3d 732, 737 (Alaska 2002) (finding ballot summary failed to meet statutory requirements, reversing court's summary judgment order, and "remand[ing] to the lieutenant governor . . . to revise the summary as necessary to comply with this order").

[69] *See Alaskans for Efficient Gov't, Inc. v. State*, 153 P.3d 296, 302 (Alaska 2007) (rejecting sponsors' argument for severing offending initiative provisions because sponsors failed to argue severance issue to superior court); *see also* Alaska R. Civ. P. 77(k)(2) (placing burden on moving party to "specifically state which of the grounds for reconsideration specified in [Rule 77(k)(1)] exists," and requiring moving party to "specifically designate that portion of the ruling, the memorandum, or the record, or that particular authority, which the movant wishes the court to consider").

that should have been made earlier.[70]  The court did not abuse its discretion by denying the motion.

But our analysis does not end there.  Alaska law designates the lieutenant governor as the executive official having the duty to prepare ballot summaries.[71]  Our role is limited to determining whether the lieutenant governor has met the statutory duty to prepare a true and impartial ballot summary; we will not invalidate the summary simply because we believe a better one could be written.[72]  When we have ruled that a ballot summary was legally deficient, we have identified the legal defects and acknowledged the lieutenant governor's statutory authority to make revisions.[73]

For instance, in *Alaskans for Efficient Government, Inc. v. State* we ruled that the ballot summary for an initiative proposing to relocate state legislative sessions to the Matanuska-Susitna Borough was inaccurate and potentially misleading.[74]  We identified legal deficiencies in the ballot summary's last sentence and suggested possible

---

[70]  *See Stephan P. v. Cecilia A.*, 464 P.3d 266, 274 (Alaska 2020) ("A litigant may not introduce new evidence or arguments in the motion, but [litigant] may move for reconsideration if '[t]he court has overlooked or misconceived some material fact.' " (footnote omitted) (quoting Alaska R. Civ. P. 77(k)(1)(ii))).

[71]  Alaska Const. art. XI, § 4; AS 15.45.180; *see also Alaskans for Efficient Gov't*, 52 P.3d at 737 (Eastaugh, J., dissenting) (explaining that duty to prepare ballot summary "is vested by constitution and statute in the lieutenant governor," noting executive branch has developed institutional skill in preparing summaries, and citing AS 15.60.005 regarding readability of certain election materials); *but see* AS 15.45.245 ("The lieutenant governor may delegate the duties imposed on the lieutenant governor by AS 15.45.010-15.45.240 to the director.").

[72]  *Alaskans for Efficient Gov't*, 52 P.3d at 735.

[73]  *Id.* at 736-37.

[74]  *Id.*

revisions.[75] We remanded the case, providing the lieutenant governor an opportunity to revise the ballot summary "as necessary to comply with [our] order."[76] And in *Planned Parenthood of Alaska v. Campbell* we held that the lieutenant governor's ballot summary for an abortion-related parental notification initiative was inaccurate because the summary omitted important details, including that the initiative was a revision of a previous unconstitutional law and that the initiative made failure to follow its prescribed code of conduct a felony.[77] After identifying the legal deficiencies, we provided the lieutenant governor an opportunity to correct the ballot summary.[78]

Out of respect for executive branch powers, we will consider the State's request that, should we rule the lieutenant governor's ballot summary is biased or misleading, we "allow the lieutenant governor to revise the ballot summary in a way that is consistent with the [c]ourt's decision."[79] The lieutenant governor's proposed revision

---

[75] *Id.* at 737. We explained that "the summary's last sentence could be revised to reflect a true and accurate statement of the relocation initiative" by making adjustments to the language, substituting the terms "must be informed of" for "must know," and "as would be determined by" for "as determined by," to remove the potential "negative view of the initiative's purpose." *Id.*

[76] *Id.*

[77] 232 P.3d 725, 730 (Alaska 2010). We explained that although a ballot summary "need not recite every detail of the proposed measure," the lieutenant governor's petition summary omitted three significant facts that "would give petition signers 'serious grounds for reflection,' " requiring the facts' disclosure in the ballot summary. *Id.* (quoting *Pebble Ltd. P'ship ex rel. Pebble Mines Corp. v. Parnell*, 215 P.3d 1064, 1082 (Alaska 2009)).

[78] *Id.* at 728 & n.6, 734.

[79] The State briefly raises a new issue in its reply brief, arguing that if the ballot summary substantially departs from the petition summary, recirculating the

(continued...)

states: "The act does not specify the process for disclosure of the public records and whether any exceptions may apply." As we previously explained, we acknowledge the genuine dispute whether the initiative would make relevant tax information unconditionally not confidential; we decline to resolve this dispute unless and until the initiative is enacted into law and before there is a dispute ripe for judicial decision. Despite the dispute about whether any Public Records Act exceptions could prevent disclosure of the relevant tax filings and supporting information, at oral argument to us the sponsors acknowledged they did not dispute the accuracy of the revised sentence's first phrase: "The act does not specify the process for disclosure of the public records."

We agree that the first portion of the revised sentence is accurate and impartial. Neither the initiative nor the current provisions of AS 43.55 specify the process for disclosing relevant tax filings and supporting information. The revised sentence's first portion accurately points out Section 7's scope without improperly opining about its legal effect. Accordingly, we conclude that the lieutenant governor may, at his discretion, revise the ballot summary to include the proposed revision's first phrase: "The act does not specify the process for disclosure of the public records."

---

**79** (...continued)
initiative petition could be required to ensure sufficient public support for the revised language. *Cf. Planned Parenthood of Alaska*, 232 P.3d at 731-34 (discussing severance of impermissible portions to correct petition summary for ballot without requiring recirculating initiative petition). Because the State failed to raise this argument before the superior court and in its opening appellate brief, we will not address it. Alaska R. App. P. 212(c)(3) (providing reply brief "may raise no contentions not previously raised in either the appellant's or appellee's briefs"); *Hurst v. Victoria Park Subdivision Addition No. 1 Homeowners' Ass'n*, 59 P.3d 275, 279 (Alaska 2002) (noting argument raised for first time in reply brief and not made in trial court was not properly before us).

## V. CONCLUSION

We AFFIRM the superior court's rulings and final judgment. We further GRANT IN PART the lieutenant governor's request to add language to the ballot summary, as noted above.